RICHARD H. MILES *vs.* FRANCIS KNOTT'S LESSEE.—*December*, 1842.

The misrecital in the writ of *fieri facias* of the judgment, on which it is founded, does not render it inadmissible as evidence for the party who purchased under it.

The failure to recite the judgment accurately in the writ of *fi. fa.*, does not render the process void.

It is erroneous process, but such an error does not affect the title of a purchaser acquired under it.

The act of 1778, chap. 21, sec. 7, gives plaintiffs a year after a stay entered on the docket to issue execution.

The act of 1823, chap. 194, gives three years from the date of the judgment, and not from the expiration of the stay, to issue execution.

If there be no stay on a judgment, or a stay not exceeding two years, execution must be taken out within three years from the date of the judgment. If the stay be for three years, or a longer period than three years, the execution may be taken out within a year from the expiration of such stay, according to the act of 1778, chap. 21.

So far as the right to issue execution is concerned, the judgment of supersedeas dates from the day of its confession, and not from the day of its being filed.

No execution can rightfully issue on a supersedeas judgment after three years from its date, without a *scire facias* to revive it.

Whether a title would pass to a purchaser under an execution issued upon a supersedeas judgment, more than three years after its date, depends upon the question whether the writ was void or voidable. If void, no title could

pass. If voidable, the purchaser acquires a title. Such process is only voidable.

The question of irregularity in the issuing of a writ of execution can never be discussed collaterally in another suit.

The copy of an account of the defendant, passed against a deceased person, certified by the register of wills, under his seal of office, is not evidence against him to establish the facts set out upon the face of such account. The law does not authorise such vouchers to be recorded, nor are they left in the custody of the register.

In an action of ejectment against the defendant in a judgment, whose land had been levied upon and sold to pay his debt, by the purchaser thereof, he is not called upon to show title out of the State. All that is required on the part of the plaintiff, is the production of the judgment against the defendant, the *fieri facias*, and proof of the sale of the land to the plaintiff.

Declarations to affect a sale made by a deputy sheriff, on the ground that they are a part of *res gestæ*, must appear to have been made at the time of the sale.

Declarations of a deputy sheriff, at the time he made a sale of land under a *fi. fa.*, are inadmissible in an action of ejectment for the land, to contradict the return of the sheriff, and thus show that a tract returned as sold by one name, was in fact sold by another name.

A verdict in ejectment which calls to run from one fixed object to another, *with the meanders of a stream,* not located upon the plots, is so entirely uncertain, whether it is within the lines of the tract claimed and defended or not, that no judgment could be entered upon it, nor writ of possession executed under it. It may therefore be set aside upon a motion in arrest, and a *venire de novo* awarded.

APPEAL from *Saint Mary's* county court.

This was an action of *Ejectment*, brought on the 28th January, 1834, by the appellee against *Eleanor Ellis*, for a tract of land called *Penerine*. At August term, 1834, she appeared, pleaded not guilty, and took defence on warrant, on which issues were joined. Her death being suggested, the appellant, her tenant in possession, was summoned, and appeared to the action. At March term, 1841, a jury was sworn, who returned a verdict, that the defendant in possession was guilty of the trespass and ejectment aforesaid, "of and in all that part of the tract or parcel of land in the declaration aforesaid mentioned, called *Penerine*, beginning at a blue stone marked A on the plot, and running thence to a locust marked B; thence with the meanders of the run to a poplar marked C; thence to D; thence to E; thence to the beginning boundary in manner and form as, &c.

The appellant, the defendant below, moved in arrest of judgment, and assigned the following reasons:

1. Because the jury have returned a verdict for the plaintiff, and found the second line of said survey to run with the meanders of the run, when there is no run located on the plots as returned with the locations, in the cause.

2. Because said verdict is defective in not finding the location consistent with those made and returned in the cause, on run is located in the cause as shown by the plots and explanations in the cause, and hence the jury erred in bringing in a verdict designating what cannot be found in the plots or in the explanations.

3. Because they erred in bringing in such a verdict, and the same is inconsistent with the plots and explanations.

4. Because they had no right or power to return as a part of said location, a natural boundary no where designated in the plots.

5. Because the plots and explanations in the cause did not justify such a verdict, and the verdict is inconsistent with the locations in the cause.

Whereupon the said *John Denn*, lessee as aforesaid, by his attorney aforesaid, *freely* here in court remits and releases to the said *Richard H. Miles*, tenant as aforesaid, all parts of the tract of land called *Penerine*, lying outside and beyond the boundaries B, C and D, as located on the plots. The motion was overruled.

1st EXCEPTION.—The plaintiff, to support the issue on his part, offered in evidence the record of an action of debt, brought by *Francis Knott* against *William H. Llewellin*, on the 15th July 1822, in which a judgment was rendered in favor of the plaintiff by *St. Mary's* county court, on the 6th August, 1823, for $295,83⅔ cents, current money, debt, and $600 damages and costs. The damages to be released on payment of the interest on the debt from 27th November, 1821, till paid; payments, if any, to be allowed.

On the 29th September, 1823, *William H. Llewellin, John Llewellin* and *Gustavus Brown*, filed in the county court a su-

persedeas judgment to *Francis Knott*, enforceable on the 29th March, 1824, for the above debt and damages. Upon which supersedeas judgment an appeal was prayed to the Court of Appeals for the *Western Shore*. At June term, 1825, the judgment upon the supersedeas was affirmed, and judgment rendered as in the county court.

On the 14th September, 1825, *William H. Llewellin, John Llewellin, Gustavus Brown, Richard H. Miles* and *Thomas Brown*, confessed another supersedeas judgment, which recited a judgment for $235.83¼ cents, debt, to be released on payment of $295.83⅔, debt, &c., corresponding in other respects with the judgment appealed from, adding however, the costs recovered in the appellate court. This judgment was due on the 14th March, 1826. These proceedings appeared in a record from the Court of Appeals.

The plaintiff then offered to read in evidence, the duly certified record of the *fieri facias*, issued on the 14th October, 1828, in which *Francis Knott* was plaintiff, and said *W. H. L., J. L., G. B., R. H. M.* and *T. B.* were defendants. This writ recited the judgment of 1823, as for $295.83 debt, &c., damages $600 and costs; the supersedeas of *W. H. L., J. L.* and *G. B.*, of the 29th September, 1823, the appeal and affirmance of that judgment, the supersedeas of *W. H. L., J. L., G. B., R. H. M.* and *T. B.*, of the 14th September, 1825. The writ further stated—and whereas, also on the 18th of April, 1826, the then sheriff of the county aforesaid, was commanded, that of the goods and chattels, lands and tenements of the said *W. H. L., J. L., G. B., R. H. M.* and *T. B.*, being in his bailiwick, he should cause to be made the debt, damages, costs and charges, and that he should have those sums before the said Court of Appeals, to be held at the city of *Annapolis*, on the second Monday in June then next, to render unto the said *Francis Knott*, the debt, damages costs and charges aforesaid, on which said second Monday in June, in the year one thousand eight hundred and twenty-six, the then sheriff made return to the said Court of Appeals, that by virtue of the said writ, to him directed for that purpose, he had taken one tract

or parcel of land called *Penryn*, containing two hundred acres more or less, of the lands and tenements of the said *W. H. L.*, *J. L.*, *G. B.*, *Richard H. Miles* and *T. B.*, in his bailiwick, being to satisfy unto the said *Francis Knott*, the debt, damages, costs and charges aforesaid, in the said writ mentioned, *which said lands and tenements remained in his hands unsold, for want of buyers, so that the said debt, damages, costs and charges, he could not have as he was by the said writ commanded.* And whereas on the twenty-second day of December, in the year eighteen hundred and twenty-six, the said then sheriff, to wit, *William Williams*, was commanded, that the said lands and tenements, so as aforesaid taken, he should expose to sale, and the money therefrom arising, he should have before the said Court of Appeals, to be held at the city of *Annapolis*, on the second Monday of June then next, to render unto the said *Francis Knott*, the debt, damages, costs and charges aforesaid, and all such costs as had accrued on the said writ of *fieri facias*, on which said second Monday in June, in the year one thousand eight hundred and twenty-seven, the said *William Williams*, then sheriff as aforesaid, made return to the said Court of Appeals, *that the tract or parcel of land called Penryn, so as aforesaid taken, had been sold under an elder judgment, so that the said debt, damages, costs and charges he could not have, as by the said writ he was commanded.* Therefore you are hereby commanded, that of the goods and chattels, lands and tenements of the said *W. H. L.*, *J. L.*, *G. B.*, *Richard H. Miles* and *T. B.*, being in your bailiwick, you cause to be made the debt, damages, costs and charges aforesaid, and have you those sums of money before the said Court of Appeals, to be held at the city of *Annapolis*, on the first Monday in December next, to render unto the said *Francis Knott*, the debt, damages, costs and charges aforesaid. Hereof fail not at your peril, and have you then and there this writ. Witness the Honorable JOHN BUCHANAN, Esq., Chief Judge of the Court of Appeals, this ninth day of June, in the year of our Lord one thousand eight hundred and twenty-eight. Issued the 14th day of October, 1828.        TH. HARRIS, *Clerk.*

Which said writ of *fieri facias* was thereon endorsed, to wit, &c.

And now at this day, to wit, the said first Monday in December, being the said first day of the said Month, in the year of our Lord one thousand eight hundred and twenty-eight, and the return day of the foregoing writ, comes into the Court of Appeals here, the said *Francis Knott*, by his attorney aforesaid, and the sheriff of *Saint Mary's* county aforesaid, to whom the said writ was in form aforesaid directed, to wit, *Thomas W. Morgan*, gentleman, makes return thereof to the court here, thus endorsed, to wit: Laid as per schedule, and land sold to *Francis Knott*, 28th November, 1828, for $550, and plaintiff satisfied as per receipt.

The schedule referred to in the said return is as follows, to wit: *Saint Mary's* county, to wit: We the subscribers, being duly summoned and sworn by the sheriff of the county aforesaid, by virtue of a writ of the *State of Maryland*, of *fieri facias*, at the suit of *Francis Knott*, to appraise the goods and chattels, lands and tenements of *W. H. L., J. L., G. B., Richard H. Miles* and *T. B.*, do appraise the same in current money, as follows, viz: one tract or parcel of land called *Penegreen*, containing 160 acres more or less, at $14 per acre,—property given in by *Richard H. Miles.* Given under our hands and seals this 29th day of October, 1828, &c.

Test,—                                THOMAS HARRIS, *Clerk.*

The defendant objected to reading the said *fi. fa.* and return, on the ground that it did not recite *correctly* the supersedeas judgment of *Francis Knott*, against *W. H. L., J. L., G. B., Richard H. Miles* and *T. B.*, in this, that the supersedeas judgment is confessed for the sum of two hundred and thirty-five dollars and eighty-three and one-third cents, and the *fi. fa.* recites a judgment for two hundred and ninety-five dollars and eighty-three and one-third cents, and prayed the court not to permit the same to be read in evidence, which prayer the court, (C. DORSEY, A. J.,) refused to grant, but admitted the same to be read. The defendant excepted.

2ND EXCEPTION.—In addition to the evidence in the first

bill of exceptions, which is made a part of this, the plaintiff offered in evidence—

The *fi. fa.* of the 14th October, 1828, before referred to, with the schedule and return under it duly certified.

The supersedeas of the 14th September, 1825.

The *fi. fa.* of 18th April, 1826.

The vendi of 22nd December, 1826, and return.

The defendant objected to the reading of the said *fi. fa.* and return, on the ground that the judgment on which the *fi. fa.* issued, was a supersedeas judgment, taken before two justices of the peace for *Saint Mary's* county, on the 14th September, 1825, more than three years before the issuing of said *fi. fa.;* and that the judgment was dead, and required to be revived by *scire facias* before an execution could issue, notwithstanding it appeared to the court, that a former *fi. fa.* issued on said judgment on the 18th April, 1826, which was returned to the Court of Appeals on the 2nd Monday of June, 1826; that said judgment being dead in law, a *fi. fa* issued on same was null and void, and property purchased under said *fi. fa.*, vested no title in the purchaser. Which instruction and prayer the court, (C. Dorsey, A. J.,) refused to give. The defendant excepted.

3RD EXCEPTION.—In addition to the evidence in the first and second bill of exceptions, which is made a part of this bill of exceptions, the plaintiff, to prove in what character *Richard H. Miles*, the present defendant, appeared in court to defend the suit of *Knott*, after proving that *Eleanor A. Ellis* occupied the tract of land called *Penerine*, now in controversy, for the years 1836 and 1837, offered to read in evidence to the jury an account and receipt of *Richard H. Miles* to *Mrs. Eleanor A. Ellis*, administratrix, for rents for the years 1836 and 1837.

ELEANOR A. ELLIS,          *To R. H. Miles, Dr.*
1837, *January* 1.

| | | | |
|---|---|---|---|
| To rent for 1836, | (say) | - | $150 00 |
| To interest from the 1st of Jan. 1837, till paid, | | | 11 25 |
| To rent for 1837, | (say) | - | 150 00 |
| To interest from Jan. 1st, 1838, till paid, | | | 2 25 |
| | | | $313 50 |

Saint Mary's County, *to wit*: On this 13th day of March, 1838, being since the death of *Eleanor A. Ellis,* before me, the subscriber, one of the justices of the peace in and for said county, appeared *Richard H. Miles,* and made oath on the Holy Evangely of Almighty God, that the above account as stated, is just and true, and that he hath not received any part of the money stated to be due, or any security or satisfaction for the same, to the best of his knowledge and belief.

Sworn before,    T. H. Miles.

Received April 1st, 1838, of *William L. Shurburn,* administrator of *Eleanor A. Ellis,* deceased, the sum of three hundred and thirteen dollars and fifty cents, in full for the within amount.  \$313.50.    R. H. Miles.

*March 14th,* 1838.—By the orphans court examined and passed.    G. Combs, *Register of Wills.*

In testimony that the foregoing is a true copy taken from the original, filed and recorded in the register of wills' (Seal.)  office of *Saint Mary's* county, I have hereunto set my hand, and affixed my official seal, this 4th day of May, Anno Domini 1841.

G. Combs, *Reg. of Wills for St. Mary's Co.*

The defendant objected to the same as inadmissible for any such purpose, but the court admitted the same to go to the jury. The defendant excepted.

4th Exception.—After the testimony incorporated in the first, second and third bills of exceptions, which is made a part of this, the defendant prayed the court to instruct the jury that the plaintiff was not entitled to recover, unless they first shewed a title out of the State, but the court refused the instruction. The defendant excepted.

5th Exception.—In addition to the evidence in the aforegoing bills of exceptions, which are made a part of this, the plaintiff to support the issues on their part joined, offered to give in evidence to the jury by *John M. Goldsmith,* that he was present at the sale of the real estate made by *George H. Morgan,* deputy sheriff of *Thomas W. Morgan,* in the *fieri facias* of *Francis Knott vs. William H. Llewellin,* and others.

The plaintiff here again set forth the *fi. fa.* of 14th October, 1828, with the levy, schedule, and return of sale—and then proved that *George H. Morgan*, the deputy sheriff, who made the sale, is dead, and that he heard *George H. Morgan,* the deputy sheriff, state that he sold the land called *Penerine,* and that *Francis Knott*, the plaintiff in said *fi. fa.*, and the lessor of the plaintiff in this suit, was the purchaser of said land called *Penerine.* The defendant then offered to read in evidence to the jury the schedule of said real estate as taken by the sheriff and appraised by sworn appraisers, and returned by the sheriff as a tract of land called *Penegreen.*

And now at this day, to wit, the said first Monday in December, being the first day of the said month, in the year of our Lord one thousand eight hundred and twenty-eight, and the return day of the foregoing writ, comes into the Court of Appeals here, the said *Francis Knott*, by his attorney aforesaid, and the sheriff of *Saint Mary's* county aforesaid, to whom the said writ was in form aforesaid directed, to wit: *Thomas W. Morgan,* gentleman, makes return thereof to the court here, thus endorsed to wit: Laid as per schedule and land sold to *Francis Knott* 28th November, 1828, for $550, and plaintiff satisfied as per receipt.

The schedule referred to in the said return is as follows, to wit:

*Saint Mary's County, to wit:* We, the subscribers, being duly summoned and sworn by the sheriff of the county aforesaid, by virtue of a writ of the State of *Maryland* of *fieri facias*, at the suit of *Francis Knott,* to appraise the goods and chattels, lands and tenements of *William H. Llewellin, John Llewellin, Gustavus Brown, Richard H. Miles* and *Thomas Brown*, do appraise the same in current money, as follows, viz:—one tract or parcel of land, *Penegreen*, containing 160 acres, more or less, at $14 per acre, property given in by *Richard H. Miles.*

Given under our hands and seals, this 29th day of October, 1828.          THOMAS W. MORGAN, *Sheriff.*

            N. B. C. WITEE,      (Seal.)

            JOHN ⋈ ELLIS,      (Seal.)
                 his / mark.

And then prayed the court to reject the testimony of *John M. Goldsmith,* as hearsay, and also inadmissible to vary or contradict the sworn and written return of the sheriff; but the court overruled the objection, and permitted the testimony to go to the jury. The defendant excepted.

The cause was argued before BUCHANAN, C. J., STEPHEN, ARCHER, DORSEY, CHAMBERS and SPENCE, J.

By P. W. CRAIN and R. JOHNSON for the appellants, and
By CAUSIN for the appellees.

ARCHER, J., delivered the opinion of this court.

The plaintiff to support the issue joined on his part, offered in evidence to the jury a record of the Court of Appeals, by which it appeared, that a judgment had been obtained in *St. Mary's* county court, by *Francis Knott* against *William H. Llewellin,* for the sum of $295.83⅔ cents and costs, on the first Monday of August, 1823; and was, on the 29th day of September, 1823, superseded, and in the confession of judgment by way of supersedeas, the amount of the judgment is stated to be $295.83¾ cents. From this supersedeas judgment, an appeal was taken to the Court of Appeals, and on the 16th July, 1825, the judgment was affirmed. On the 14th September, 1825, the judgment thus affirmed, was superseded by the defendants, together with *Richard H. Miles,* and in the said supersedeas judgment, the parties confess judgment for the sum of $235.83⅓ cents, debt, with interest and costs, which were recovered by *Francis Knott* in the Court of Appeals, on the 16th July, 1825, and the supersedeas proceeds, as follows, "the said sum of $295.83⅓ cents, current money, debt, to be released on the payment of $295.83⅓ cents, with interest, &c., and costs, &c., to be levied of your bodies, goods, &c., in case the said defendants in the said judgment, shall not pay and satisfy to *Francis Knott,* the said sum of $295.83⅓ cents, current money, damages and costs; to be released on payment of $295.83⅓, with interest, and costs, so as aforesaid recovered against them, with the additional costs thereon, on the 14th

day of March next." The plaintiff further offered in evidence a *fi. fa.* issued on the said supersedeas judgment, on the 14th day of October, 1828; by this it appears that the supersedeas judgment is described, as corresponding with the judgment in the Court of Appeals. The defendant objected to the reading of the *fi. fa.* in evidence, on the ground, that it did not recite correctly the judgment of *Francis Knott* against *Richard H. Miles* and others, in this; that the supersedeas judgment is confessed for the sum of $235.83⅓ cents, and the *fi. fa.* recites a judgment for $295.83⅓ cents, but that the court admitted the *fi. fa.* to be read in evidence, and from this opinion of the court an exception has been taken.

If the defendant were right in supposing that there was a mis-recital of the judgment in the *fi. fa.*, we think, that for such cause only, the *fi. fa.* would not be inadmissible in evidence. It must be remembered, that no exception is taken to the judgment, but to the issuing of a *fi. fa.*, not corresponding with the judgment. The failure to recite the judgment accurately in the *fi. fa.*, did not render the process void. It was erroneous process. But such an error would not affect the title of a purchaser, acquired by a sale under it. 4 *Wend.* 464. 12 *Wend.* 96, 97. For this reason, we think the evidence offered in the first bill of exceptions, was admissible.

The 2nd exception was intended to raise the question whether a purchaser under a *fi. fa.*, issued more than three years after the rendition of the judgment, acquired a title in virtue of such sale.

The act of 1778, chap. 21, gives plaintiffs a year after a stay entered on the docket, to issue execution. The act of 1823, chap. 194, gives three years from the date of the judgment, within which to issue execution. The act of 1823, chap. 194, is too explicit to admit of a doubt. The Legislature did not mean to give three years from the expiration of the stay, but three years from the date of the judgment. They use the words "stay," in the law of 1778, and the words "judgment," in the law of 1823, from the date of which executions are to issue. By the use of such different terms, it is fair to infer

they meant different things; accordingly, if there be no stay on the judgment, or a stay not exceeding two years, execution must be taken out within three years from the date of the judgment—if the stay be for three years, or a longer period than three years, then execution may be taken out within a year from the expiration of such stay, according to the act of 1778, chap. 21.

The judgment of supersedeas dates from the day of its confession, and not from the day of its being filed, at least, so far as this question is concerned. How far it operates as a lien from the date of its confession, is not a question involved in this case; but the only question is, what is the date to which you are to look in issuing an execution. And this question is answered by the act of Assembly of 1823, which declares it may be issued at any time within three years from the date of the judgment.

In this case, the three years from the date of the supersedeas judgment expired on the 14th day of September, 1825, and the *fi. fa.* on which the land was sold, issued on the 14th of October, 1828, more than three years from the date of the judgment. No execution, therefore, could rightfully issue on the judgment, without a *sci. fa.* to revive it.

Could a title pass to a purchaser under an execution thus issued? This depends on the solution of the question, whether the execution is voidable or void. If the latter, clearly no title would pass. But if the former, the purchaser acquires a title. That the process is only voidable, is abundantly established by many authorities, which will be found referred to in the opinion of Chancellor *Kent,* 16 *John.* 575, 576, and he there says that the question of irregularity can never be discussed collaterally in another suit; and to the same effect will be found 8 *John. Rep.* 361. We, therefore, think the court below committed no error in the opinion by them expressed in the second bill of exceptions.

We are of opinion, that the evidence offered in the third bill of exceptions was inadmissible. The register of wills was not authorised by law to furnish such a copy of vouchers,

passed by an executor or administrator, as will be received in evidence to establish the facts set out on the face of such vouchers. The law does not require these vouchers to be recorded. They belong to the executor or administrator, and are not placed in the office for record.

We think the court were right in the opinion expressed by them in the fourth bill of exceptions. It is admitted, that the defendant in this suit is the same person who was debtor in the judgment obtained by *Knott;* he is here taking defence for this land, and resisting the right of the plaintiff to recover. In the record he is called the tenant of *Mr. Ellis.* Whatever interest he has in the land, if the plaintiff establishes the fact of his being a purchaser under a judgment and *fi. fa.* against the defendant, such land should be recovered by the plaintiff, whether he is enabled to establish his right by a regular deduction of title from the State or not, is immaterial. All that is required, is the production on the part of the plaintiff of the judgment against the defendant, the *fieri facias,* and the sale of the land to the plaintiff. *Fenwick vs. Floyd,* 1 *Harr. & G.* 174.

The plaintiff, in the fifth bill of exceptions, offered to prove by a witness, that he was present at the sale of the real estate made by *George H. Morgan,* deputy sheriff, on the *fieri facias* of *Francis Knott vs. William H. Llewellin* and others; that the deputy sheriff who made the sale, is dead, and that he heard him state, that he sold the land called *Penerine,* and that *Francis Knott,* the plaintiff in the *fi. fa.,* and lessor of the plaintiff, was the purchaser. The question on this exception arises on the admissibility of the evidence above offered.

This evidence is objected to, both as hearsay evidence, and as contradicting the sheriff's return. It is insisted, that it ought to be received as part of the *res gestæ.* If this were a case in which evidence of the *res gestæ* was admissible, still this evidence could not be received, because the statement of the deputy sheriff is not proved to have been made at the time of the sale. It may have been made at any time between the sale and the death of the deputy sheriff.

But if the declarations offered in evidence had been made at the time of the sale, that the evidence contradicts the sheriff's return, is an unsuperable objection to its admissibility. The sheriff returns a sale of a tract of land called *Pennygreen*, the evidence is to show that he sold a tract called *Penerine*. There is no evidence that they are the same tract; on the contrary, the presumption would be, the names being different, that the tracts were different. The levy was on *Pennygreen*, and no other tract could be legally sold but *Pennygreen*, yet the evidence would make the sheriff, although he returns a levy and sale of one tract, declare he had sold another tract not levied upon. We are, therefore, of opinion, that the evidence offered in this exception, was inadmissible, and should have been rejected by the court below.

After verdict, a motion was made in arrest of judgment.

The jury found for the plaintiff—for all that part of a tract of land called *Penerine:* beginning at a blue stone, marked A on the plot, and running thence to a locust, marked B; thence with the meanders of the run to a poplar, marked C; thence to D; thence to E; thence to the beginning. *The run* called for in the verdict is not located on the plots, so that the line from B to C is entirely uncertain whether it is within or without the location of the land called *Penerine*, as located by the plaintiff, is unknown, and is incapable of ascertainment. On this account the verdict is so imperfect, that no judgment could be entered thereon, and no writ of possession could be executed.

The next question which arises, is on the motion in arrest of judgment. We have seen that the verdict is imperfect and uncertain. The matter in issue is not so ascertained, that the court could render any judgment capable of being executed. The motion in arrest, in many cases, as where the pleadings are defective, may admit the correctness of the verdict, but this is not universally the case. Judgments are sometimes arrested for *faults* in the verdict. *Gould on Plead.* 522. The same author refers to many instances of defective verdicts, where the remedy is by motion in arrest. In *Dorsey's Lectures*, 73, it is said, that a judgment in ejectment will be ar-

rested for uncertainty. Where a judgment is arrested for such defects in the verdict, a *venire de novo* must be awarded. *Gould* 526. The court below were, therefore, in error in not arresting the judgment in this case, which we have here is uncertain and imperfect.

As it is uncertain whether the finding is within or without the pretensions of the plaintiff, it is a case, certainly not proper for a remittitur.

We express no opinion on the question, whether the super-sedeas judgment is a binding and operative judgment, no question on this subject having been raised in the bills of exceptions.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.