## EDWARD E. MANTON and others *vs.* JOSEPH B. HOYT and others.

*Attachment—Effect of the Omission of the Scire Facias clause in a Writ of Attachment—How such Omission should be availed of—Sale under a Judgment of Condemnation; Title thereby vested—Presumption of Notice of a Judgment—Sufficiency of a Return to a Writ of Attachment.*

On the 7th of March, 1853, O'Hern became the owner in fee of an undivided half of certain tracts of land in Allegany County. On the 10th of April, 1855, continuing such owner, he confessed a judgment for $14,368.97, in the Circuit Court of the United States for the Maryland District at the suit of Nicholas. On the 10th of May following, the aforesaid judgment remaining unpaid, O'Hern conveyed the undivided half of said lands to the Lonaconing Coal and Transportation Company. The title of the company so acquired, passed through sundry mesne conveyances to M. and others. On the 20th of April, 1866, Nicholas caused a writ of attachment to be issued on his judgment against O'Hern, and to be levied, among other property, upon the undivided moiety of said tracts of land. To this attachment O'Hern appeared by counsel, and judgment of condemnation against the lands attached, was entered. Upon this judgment a writ of *fieri facias* was issued, and thereunder the interest of O'Hern was sold by the marshal to Nicholas, whose interest by regular conveyances became vested in H. and others. An action of ejectment was brought by M. and others against H. and others to recover the undivided half of the aforementioned lands. The plaintiffs contended that the writ of attachment did not contain the clause of *scire facias* in respect of the lands attached, and that such omission vitiated the sale, and their title was not thereby divested. HELD:

1st. That the omission of the clause of *scire facias* in the writ of attachment, was a defect sufficient to have authorized the Circuit Court to set the sale aside, if the objection had been made there; but it did not render the proceedings absolutely void, so as to defeat the title of the purchaser, brought in question in a collateral proceeding.

2nd. That such an irregularity was insufficient to impeach the sale, except by a direct inquiry before the Court having jurisdiction and charge of the proceeding.

3rd. That the attachment, condemnation, and sale of the property under the authority of the Circuit Court, were sufficient to vest in the defendants all the title, which belonged to O'Hern at the time of the rendition of the original judgment against him.

4th. That the plaintiffs as aliences of O'Hern subsequent to the rendition of the judgment, were to be presumed to have had notice thereof, and to have acquired title in subordination thereto.

A return to a writ of attachment by the marshal, that he had attached the undivided half in certain tracts of lands, specifying them by name, "but found no person in possession thereof, the same being wild and unimproved lands," is sufficient, if according to the fact, and the writ contain the usual clause of *scire facias*.

APPEAL from the Circuit Court for Allegany County.

This was an action of ejectment brought on the 10th of August, 1874, by the appellants against the appellees to recover the undivided half of certain tracts of land in Allegany County, called "Hoye's Coal, Iron and Lime Discovery,"and "Duff Green's Iron Ore Lands." The plaintiffs claimed title through Michael P. O'Hern who on the 7th of March, 1853, was seized in fee of the undivided half of said lands. On the 10th of April, 1855, O'Hern being such owner, a judgment by confession for $14,368.97, was recovered against him by Anastasius Nicholas, in the Circuit Court of the United States, for the District of Maryland. On the 10th of May following, this judgment remaining unpaid, O'Hern conveyed the undivided half of said lands to the Lonaconing Coal and Transportation Company. The title thus acquired by this Company, after sundry mesne conveyances passed to the plaintiffs. On the 20th of April, 1866, Nicholas caused a writ of attachment to be issued on his judgment against O'Hern, and to be levied (among other property) upon the said undivided half of said tracts of land. The return of the marshal to the writ of attachment, after stating his seizure thereof, further stated : "And I hereby certify that I attached the aforesaid undivided half part of said tracts of land, called

"Duff Green's Iron Ore Lands," "Hoye's Coal, Iron and Lime Discovery," and "Millstone Point," but found no person in possession thereof, the same being wild and unimproved lands." To this attachment the defendant O'Hern appeared by counsel at the November Term, 1866, and on the 2nd of April, 1867, the ensuing Term, judgment of condemnation was entered under the rule for want of a plea. Upon this judgment of condemnation a writ of *fieri facias* was issued on the 12th of November, 1867, and the land in controversy was duly sold thereunder by the marshal, to Anastasius Nicholas, and conveyed to him by deed. It was admitted that the defendants had a regular title by conveyances under Nicholas.

*First Exception.*—At the trial of the cause the defendants offered in evidence the records of the judgment recovered by Nicholas against O'Hern, and the plaintiffs objected to their admissibility "because it did not appear from said records that the plaintiffs had any notice of said proceedings." The Court (PEARRE and MOTTER, J.,) overruled the objection and permitted the records to be given in evidence. The plaintiffs excepted.

*Second Exception.*—The plaintiffs asked the following instructions:

1. That if the jury find from the evidence in the cause that Michael P. O'Hern was seized of a legal title in fee-simple to the undivided moiety of the lands in controversy on the 7th of March, 1853, and that the several deeds offered in evidence by the plaintiffs were executed and delivered, then the plaintiffs were seized of a legal title in fee-simple to one undivided moiety of said lands by virtue of said deeds, and are entitled to recover to the extent of said title, although they may also find that the proceedings shown by the record of proceedings in the Circuit Court of the United States for the District of Maryland, offered in evidence, were had, and the deeds offered by the defendants in evidence were executed and delivered.

2 That there is no sufficient evidence in the cause to show title out of the plaintiffs for the undivided moiety.

The defendants prayed the Court to instruct the jury as follows:

That if they find from the evidence in the cause that Anastasius Nicholas obtained the judgment offered in evidence, on the 10th of April, 1855, in the Circuit Court of the United States for the Maryland District, against Michael P. O'Hern, and that at the date of said judgment, said O'Hern was the owner in fee of one undivided half interest in the tracts of land mentioned in the declaration in this suit; and if they further find that the proceedings in the Circuit Court of the United States for the District of Maryland, offered in evidence in this cause, were had, including the sale by the marshal offered in evidence, and the deeds offered in evidence by the defendants were executed and delivered, then the plaintiffs are not entitled to recover, and the verdict must be for the defendants.

The Court granted the prayer of the defendants and rejected the prayers of the plaintiffs. The plaintiffs excepted; and the verdict and judgment being against them, they appealed.

The cause was argued before STEWART, BRENT, GRASON and ALVEY, J.

*J. H. Gordon,* for the appellants.

The writ of attachment in this case is defective. It does not contain the necessary clause of *scire facias.* It omits the command to the marshal to make known to the party in possession of the *lands* of Michael P. O'Hern, that they appear and show cause; the proceedings, therefore, under it are void.

By the Act of 1862, ch. 262, the plaintiff in the judgment is given a more summary remedy than previously existed, but in adopting the new remedy, conditions are

imposed. The parties against whom it is to operate, are to have notice. When the judgment is above three years standing, the attachment "shall be subject to the same defences by the defendant as in cases of *scire facias*." No change is made by this statute in the form or requirements of the writ of attachment, and reference must, therefore, be had to the 12th and 30th sections of Art. X , of the Code to see what is required. These sections are imperative in requiring the clause of *scire facias,* giving notice to the parties interested, to appear and show cause.

"An attachment is not an ordinary process by which to arrive at the fruits of a judgment, and will only lie when specially authorized." *Harden & Carson vs. Moores, 7 Har. & John.,* 11 ; *Davidson's Lessee vs. Beatty,* 3 *Har. & McHen.,* 618. It must, therefore, be strictly construed, and is void if any substantial part is omitted. *Thompson vs. Towson,* 1 *Har. & McHen.,* 504, 506 ; *Hatton vs. Ise-monger,* 1 *Strange,* 641.

In the language of the Court of Appeals in *Stone vs. Magruder,* 10 *Gill & John.,* 386, the design of the *scire facias* clause was notice to all parties interested in the property or claim to be affected, and if that right of these parties is neglected, "the design of the Legislature in giving notice would be defeated." *Barr vs. Perry,* 3 *Gill,* 318 ; *Wever vs. Baltzell & Davidson,* 6 *Gill & John.,* 340 ; *Shivers vs. Wilson,* 5 *Har. & John.,* 132, 133 ; *Evesson vs. Selby and Polk,* 32 *Md.,* 344, 345.

An attachment is not a substitute in all respects for the *fieri facias.* It cannot be used to enforce the lien of the original judgment. *Davidson's Lessee vs. Beatty,* 3 *Har. & McHen.,* 618. It only takes effect from the time of the levy, and operates on the interest which the defendant then had in the land. *Wallace et al. vs. Forrest & Stoddert,* 2 *Har. & McH.,* 261 ; *Drake on Attach.,* ch. 8, secs. 221-223, and secs. 228, 229 ; *Cockey vs. Milne's Lessee,* 16 *Md.,* 200.

The marshal only seized and levied upon the right, title and interest of O'Hern, and that was the only thing condemned. The execution, therefore, only authorized the sale of the right, title and interest so taken under the attachment, and nothing more was sold, so that the title conveyed by O'Hern on the 10th of May, 1855, to the Lonaconing Coal and Transportation Company, and afterwards vested in the plaintiffs by regular conveyances, was not affected by the proceedings under the attachment. See *Rhodes & Williams vs. Amsinck & Co.*, 38 *Md.*, 355.

The Act of 1862, ch. 262, provides, that "if more than three years have expired from the date of the judgment, the attachment shall be liable to the same defences as in case of *sci. fa.*" In this case eleven years had elapsed before the attachment issued, and eight years before the plaintiffs purchased. When they purchased the property, it had passed through several hands, and they had a right to presume, and no doubt did act upon the presumption, that the lien of the judgment had been discharged by payment or otherwise. 3 *Blackstone's Com.*, 421; 1 *Greenleaf's Evidence*, 524-40; 2 *Tidd's Prac.*, 1102, 1103.

The Act of 1862 provides for notice to all parties whose rights are to be affected, by providing that the attachment "*shall* contain the clause of *scire facias* to each person in whose hands or possession *the lands*, tenements, &c., so attached, are, showing the object of the · Legislature to be to prevent injustice and save the rights of parties.

Before the passage of the Act of 1862, the interest of the plaintiffs in this case could not have been affected at the time the attachment issued, without reviving the judgment by *scire facias*, and notice to all the *terre-tenants*. *Doub vs. Barnes*, 4 *Gill*, 11; *Warfield vs. Brewer*, 4 *Gill*, 265. And surely the Legislature did not intend to deprive them of their rights of notice by the Act of 1862, for that Act expressly requires the clause of *sci. fa.* for the purpose of notice.

*Stewart Brown* and *A. B. McKaig*, for the appellees.

The alleged omissions and defect in the records admitted in evidence, are not, in themselves, sufficient to vitiate the attachment; nor can they be taken advantage of in this collateral proceeding.

In considering such a question, it is of importance to note, in the first place, that the proceeding was *not* an attachment on *mesne process,* in derogation of the Common Law, under Acts conferring special limited jurisdiction, to be strictly construed, and requiring strict compliance with their terms, but was an *attachment on judgment,* from an early period in this State, recognized as a regular and ordinary judicial process, to be used in place of, performing *same office,* and to be governed by the rules and principles applied to any *other execution. Act of* 1715, *ch.* 40, *sec.* 7; *Griffith vs. Etna Fire Ins. Co.,* 7 *Md.,* 102; *Baldwin vs. Wright & Kent,* 3 *Gill,* 246; *Hinkley & Mayer on Attachments, sec.* 344.

The statement of this fact is a sufficient answer to the entire argument of the appellants, based upon the particularity required in writs of *Attachment on Warrant,* the authorities cited, having no application to *this* case

It will sufficiently appear, also, from the mere consideration of the character of this process, (to be used in lieu of any other execution,) that an attachment enforces the lien of the judgment on which it is founded. The attachment, like the *fieri facias,* is a species of proceeding *in rem,* taking the land or goods attached into the legal or actual possession of the Court or its officer, to be dealt with as the Court may direct, with an opportunity for any one claiming adversely to set up said claim, and with notice required as to all in whose actual *"hands"* or *"possession"* the same are, but as to all others, the seizure itself being sufficient notice. Such process therefore, looked upon as a proceeding for the enforcement of the judgment lien, and being preliminary merely to a con-

demnation and sale, instead of being subjected to strict criticism, is entitled to all the presumptions in favor of judicial sales, the titles under which Courts "guard with jealous vigilance." *Tomlinson's Lessee vs. Devore,* 1 *Gill,* 345.

The appellants claim title under an alienation by the judgment debtor, (O'Hern,) made 10th May, 1855. At this time the judgment was not merely a lien on this land, but it was in full vigor, the right of *immediate* execution then subsisting.

Title thus acquired, must be in strict subordination to the lien of the judgment, and the right of the creditor, and if thereafter by lapse of time, *scire facias* became necessary to revive the judgment, these alienees, having become such while the judgment was alive, at a time when *there was no presumption of payment,* would not have been necessary parties to such process, nor entitled to notice thereof. *Murphy vs. Cord,* 12 *G. & J.,* 182 ; *Doub vs. Barnes,* 4 *Gill,* 11 ; *McElderry vs. Smith,* 2 *Har. & J.,* 72 ; *Tayloe vs. Thompson,* 5 *Peters,* 369.

It follows also, (and this has a bearing likewise on the question as to whether these objections can be made in this suit,) that if a *fieri facias* had been issued after three years, without a *scire facias,* and sale made thereunder, although a manifest error and irregularity, such sale would have been upheld. *Miles vs. Knott,* 12 *G. & J.,* 442, 453 ; *Manahan vs. Gorman,* 3 *Md.,* 463 ; *Jackson vs. Robbins,* 16 *Johns,* 582 ; *Elliott's Lessee vs. Knott,* 14 *Md.,* 121.

In this case, however, the process of attachment on judgment was used, as authorized by Act of 1862, chap. 262, by which Act said attachment is made, "subject to the same defences by *defendant* as in cases of *scire facias,*" but the appellants maintain that the principles established in the cases above cited should be applied thereto, and that there is no more right *in such alienee* to notice, or *reason*

for such notice in the one case than in the other. It may be also asked what defences could the appellants have urged? The defendant appeared and had none to make.

. In a proceeding by attachment, there is no provision of law for notifying parties claiming interest therein or *alienees as such.* Under any form of the writ, the sheriff is required to warn "each person, *in whose hands or possession* the lands, &c. attached are," to appear, &c., *Code, Art.* 10, *sec.* 12 ; that is to say, those *in actual possession.*

Where this is impossible, and "if the property is unoccupied," the officer must "make a corresponding return," but is required to do no more. *Barney vs. Patterson's Lessee,* 6 *H. & J.,* 201.

In that *case,* no service was made upon the party actually in possession. In *this* case, personal service could not have been had on the plaintiffs, who were, and still are residents of Massachusetts. Nor were they or any one *in possession* of the lands, and the marshal *did make* the corresponding special return. Any personal service or notice would have been equally impossible, had *scire facias* been resorted to, and a construction of the law would be unreasonable, which would enable a non-resident alienee of land, bound by judgment, by leaving the land unoccupied, and no one in possession to respond to process, to acquire a perfect title in defiance of the judgment creditor. The service and return in this case, therefore were sufficient. *Hinkley & Mayer on Attachment, page* 60, *sec.* 161, and case above cited.

The form of writ used, will be found to be the form in common use, at least since the Act of 1715, ch. 40, sec. 7, and contains the *scire facias* clause by said Act required. See 2 *Evans' Harris,* 377, 378.

The writ used, has by judicial construction, been held to mean and require, so far as its *scire facias* clause is concerned, the same thing as is required by section 12 of Art. 10 of the Code, and was sufficiently formal and explicit.

The appellants will not be permitted to stand by and let possession of this property go, first into the Court and then to the defendants, without making objection in the proper Court, and after this lapse of time raise these questions in this collateral way. See *Jackson vs. Robins*, 16 *John.*, 582; *Elliott's Lessee vs. Knott*, 14 *Md.*, 121; *Barney vs. Patterson's Lessee*, 6 *H. & J.*, 182, 201; *Schley's Lessee vs. City of Balto.*, 29 *Md.*, 34; *Johnson vs. Lemmon, Gar.*, 37 *Md.*, 336; *Peters vs. League*, 13 *Md.*, 58, 63; *Windwart vs. Allen*, 13 *Md.*, 196.

STEWART, J., delivered the opinion of the Court.

Both parties in this ejectment claim title to the lands in dispute through O'Hern.

In April, 1855, O'Hern confessed judgment to Nicholas, who, in April, 1866, caused execution by attachment to be issued thereon, and the lands were seized by the marshal as unoccupied, and so returned.

O'Hern appeared, judgment of condemnation was rendered; *fieri facias* was issued thereon in 1867, and the lands were sold and conveyed by the marshal to Nicholas. The defendants claim under this title.

In May, 1855, O'Hern conveyed the lands to the Coal Company. After sundry *mesne* conveyances, they were sold to the plaintiffs in the year 1863, who claim to hold in this way from O'Hern.

The only point in the case, is whether the sale under the execution by attachment, was sufficient to vest the title to the lands in the defendants, to the exclusion of the plaintiffs?

The attachment omitted the clause of *scire facias*, so far as the lands and tenements are concerned, or the plaintiffs as alienees thereof.

It is contended by the appellants' counsel, that this was such defect as to vitiate the sale, and the plaintiffs' title was not divested thereby.

According to the 30th sec. of Art. 10 of the Code, authorizing the attachment instead of any other execution, the clause of *scire facias* provided by the 12th section is required to be inserted therein.

The execution in this case having been issued in April, 1866, some eleven years after the judgment, the defendant, according to the provisions of the Act of 1862, ch. 262, was entitled to the same defences, as if there had been a *scire facias* to revive the judgment.

O'Hern, the defendant in the judgment having appeared in the attachment proceeding, and waiving notice, the Circuit Court certainly had jurisdiction over him, and could rightfully render the judgment of condemnation as to the lands attached, without notice to the plaintiffs in this case. The failure to give notice to them, as alienees of O'Hern, subsequent to the lien of the judgment, could not vitiate the sale of O'Hern's right to the property at the time of the rendition of the judgment.

The omission of the clause of *scire facias* in the attachment, was without doubt a defect, sufficient to have authorized the Circuit Court, to have set the sale aside, if the objection had been made there, but it did not render the proceedings absolutely void so as to defeat the title of any purchaser brought in question, in a collateral proceeding.

Such an irregularity is insufficient to impeach the sale, except by a direct enquiry before the Court having jurisdiction and charge of the proceeding.

Errors or defects in the proceedings where the Court has jurisdiction must be corrected by some direct proceeding before it, or by appeal; this is the universal doctrine, and has been uniformly so regarded by this Court. *Barney vs. Patterson's Lessee,* 6 *H. & J.,* 182 ; *Miles vs. Knott,* 12 *G. & J.,* 442 ; *Elliott vs. Knott,* 14 *Md.,* 121 ; *Clark & Jackson vs. Bryan & Lunt,* 16 *Md.,* 172; *Schley's Lessee, vs. Mayor, &c. of Balt.,* 29 *Md.,* 34.

Manton, *et al. vs.* Hoyt, *et al.*

According to the marshal's return, the lands belonging to O'Hern, were attached, and so returned as in possession of no person, "the same being wild and unimproved lands."

Such a return, if according to the fact, was sufficient if the attachment had contained the usual clause of *scire facias. Barney vs. Patterson's Lessee,* 6 *H. & J.,* 201.

The attachment, condemnation and sale of the property under the authority of the Circuit Court, were sufficient to vest in the defendants all the title, which belonged to O'Hern, at the time of the rendition of the original judgment against him.

That judgment existed as a *lien* on the land, then held by O'Hern, subject of course to all judgment *liens* and outstanding equities, existing anterior thereto. *Richardson vs. Stillinger,* 12 *G. & J.,* 478.

It continued to operate as a *lien* until the sale of the property to satisfy the judgment, or it was otherwise discharged or became barred by limitation. *Murphy vs. Cord,* 2 *G. & J.,* 182; *Doub vs. Barnes, et al.,* 4 *Gill,* 11.

The plaintiffs as alienees of O'Hern, subsequent to the rendition of the judgment, are to be presumed to have had notice thereof, and to have acquired title, in subordination thereto.

All persons dealing with O'Hern, in reference to the land bound by the *lien* of the judgment, could only acquire rights if any, subject thereto. *Martin vs. Martin,* 7 *Md.,* 368.

If the judgment had been passed or otherwise discharged so as no longer to operate, the defendants might have made such objection in the proceedings under the attachment, before the Circuit Court, whenever they had notice, that the judgment was used to their prejudice; or resorted to such other remedies as appropriate to the case; but that the sale of the marshal can be set aside in this proceeding, upon such hypothesis, or for the reasons urged, is a proposition at war with the established doctrine of this Court.

*Judgment affirmed.*

(Decided 24th June, 1875.)