NANCY CALWELL, *et al. vs.* HENRY BOYER.—*Dec.* 1836.

It is no objection to a decree for the sale of real estate, for the purpose of distributing the proceeds among the parties entitled, that the interest of a party to the proceedings to a portion of the proceeds, has not been sustained by proof.

It in such a case however, is necessary that the parties litigant, should prove their title to the property to be sold; but when there was nothing in the proceedings putting their title in issue, *prima facie* evidence was deemed sufficient to support the jurisdiction of the court.

Since the act of 1832, ch. 302, all objections to the competency of witnesses, and the admissibility of evidence must be raised by exceptions filed in the court of Chancery, or county courts as courts of equity; and no point relating to either shall be raised, or noticed, or determined, or acted upon, by the Court of Appeals, unless it shall clearly appear in the record, that such point had been raised by exceptions as aforesaid.

Where the court below certified, that a bill had been taken *pro confesso,* against a defendant, and an *ex parte,* commission issued, because he had failed to answer according to the rules of the court; and such rules were not in the record, nor the time of holding its intermediate equity terms prescribed by law; this court will assume the verity of such certificate, and presume that the order *pro confesso,* was legitimately passed.

When a supplemental bill is filed to bring in a new party in interest, such new party alone should be made to respond to it.

The answer of one defendant is not evidence against a co-defendant, even as to matters in contest between the complainant and such co-defendant; and much less would such answer be evidence, in adjudicating upon the conflicting claim of the defendant's *inter se.*

According to the well settled practice in the court of Chancery of Maryland, the issuing and service of a subpœna always precedes the issuing of a commission to take the answer of infants; but a departure from this practice, cannot be made the ground for the reversal of a decree in the appellate court; though at the proper time and for the appropriate purpose, it might have been made the subject of a motion in the court below.

APPEAL from the equity side of *Harford* county court.

On 1st June 1833, *Henry Boyer* filed his bill against *Nancy Calwell* and others, charging that one *Samuel Calwell,* late of said county, departed this life about the year 1800, intestate and seized in fee of a tract of land called the *Grove;* that he left the following children, viz : &c. his heirs at law ; that *James,* son of the said *Samuel,* resides in the *State of Virginia ;* that *Ann,* one of the daughters of *Samuel,* intermarried with *Thomas Boyer,* and is since dead, leaving the said *Henry Boyer* and his two brothers, *Theodore and James,* her heirs at law ; that *William,* son of the said *Samuel,* is since dead, leaving a widow, *Polly Calwell,* entitled to dower in her husband's share of said land, and the following heirs at law, &c. *John,* one of the sons of *William,* resides in *South Carolina,* and *Laura,* one of his daughters is an infant ; that *Thomas* was another son of *Samuel,* who died intestate and leaving a widow, *Nancy Calwell,* and the following children, &c. heirs at law. And the bill also charged, that it was impossible to divide said land among the several persons interested, and that it would be for the benefit of all concerned, that the same should be sold. The bill prayed *subpœna* against the parties ; a commission to take the answers of the infants ; and publication against the non-residents; and for general relief.

*Subpœnas* were issued to *Harford* and *Baltimore* counties, on the 4th June, 1833 ; and an order of publication passed as prayed. A commission to take the answer of infants was also ordered on the 3d June, 1833, which was issued on the 16th June, 1833. The *subpœnas* were returned to August term, 1833, when *Henry Boyer* filed a supplemental bill to make *Samuel Taggart* a purchaser of the interest of one of

the heirs a party to the proceeding. The answers of the infants by their guardians being in with the proof of publication, the court passed on the 9th June, 1834, an interlocutory decree, *pro confesso* against all the defendants of full age who had failed to appear, and against *Samuel Taggart*, who had appeared and not answered, and ordered an *ex parte* commission to take proof. Upon the return of the commission, the court ordered the tract of land called the *Grove*, to be sold, and appointed a trustee for that purpose on the usual terms. From this decree the defendants appealed.

The questions of fact in dispute upon the evidence appear in the notes of counsel and opinion of this court.

The cause was submitted on the notes of counsel to BUCHANAN, Ch. J. and STEPHEN, ARCHER, DORSEY, CHAMBERS, and SPENCE, Judges.

O. SCOTT, for the appellants, contended:

The appellant suggests to the court, that there is error in the decree in this cause.

1. Because there is no proof of the material allegations in the bill.

2. Because there is no answer for the defendant, *Samuel*, who is alleged to be an infant.

3. Because the order to take the bill *pro confesso*, and to issue an *ex parte* commission, passed before the rule to answer expired.

4. That no notice was given to absent defendants to answer supplemental bill, nor have the infants answered supplemental bill.

5. That commission issued to take the answers of the infants, *Mary Calwell, John Calwell*, (of Thomas,) *James Calwell*, (of Thomas,) *Frances Calwell, Amanda Calwell*, and *Lucien Calwell*, before the same were summoned.

In regard to the first it will be seen, that there is no proof whatever of the sale to *Taggart* alleged in the bill. In cases like this, where the proceeding is *ex parte*, the com-

plainant will be required to prove strictly every material fact. The sale alleged is a material fact, it makes a new owner to the land, and divests several of the defendants of their interest.

There is no proof of the title of the parties. In a proceeding, all the parties interested in the land ought to be parties, in order that the entire estate may be sold and the money divided.

The only evidence of title in any of the parties, is the testimony of *Bussey*, who states that *S. Calwell*, died seized, and his widow lived on the land a long time afterwards, but when she died or relinquished possession does not appear. There should be proof of the possession since *Calwell's* death. That occured thirty years ago by the allegation in the bill. The patent should have been produced to shew title out of the *State*. Then perhaps, long continuous possession would have been sufficient.

There is no proof that the persons named as heirs of *S. Calwell*, are his heirs.

No witness speaks to it but *Theodore Boyer*, his testimony is inadmissible. He is a party to this suit and there is no order for his examination. Besides he is interested, he is proving himself an heir, and thereby entitling himself to a part of the proceeds of the sale. A defendant cannot be examined but on special order, and this case being tried *ex parte*, all questions are open here. There being infants in this case every fact must be proved, none can be regarded as admitted by them.

Wherever an infant is a party he must answer by guardian before a decree can be had against him. There is no answer for *Samuel*, one of the infant defendants.

The interlocutory decree in this cause passed 9th June, 1834, and it will be seen by the record, that the rule to answer was laid at the March term, 1834, and that the cause was then continued till August term, so that no order could have been regularly passed till August. The rule to answer must have operated to the day of the next continuance. The

act of Assembly requires, that the rule to answer should have expired before any such interlocutory order was passed.

When a bill is amended or a supplemental bill filed, new answers are required. The infants in this case never answered and never were required to answer the supplemental bill, nor was any notice given to the absent defendants to answer the supplemental bill.

According to the practice in the court of Chancery, a commission to take the answer is never issued till the infant is summoned. In this case the commission issued before the parties were summoned—this is irregular. The infants ought to be summoned to bring them within the control of the court.

If the testimony of *Boyer* be excluded, as it is contended it ought to be, then there is no proof of who were the heirs of *Samuel Calwell*, and there is no proof of the death of *Dorsey Calwell* and *Sarah Calwell*, two of the alleged heirs, if his testimony be retained.

The parties or a number of them cannot claim as heirs to *Samuel Calwell*, from the complainant's own showing *Samuel* died in 1800, leaving children who were his heirs. The present owners must claim as heirs to the children of *Samuel*, and there is no proof who the heirs of the children of *Samuel Calwell* are.

A. W. BRADFORD, for the appellee, contended :

The first objections urged by the appellants to the decree in this case, is the want of proper proof of the material allegations of the bill; and the first defect in the proof which the appellant's attorney undertakes to designate is, that there is no proof of the sale to *Taggart*, one of the defendants.

To estimate the materiality of this allegation, so far as it relates to the subject matter of the suit, it may be well, briefly to recur to the character of the proceeding, which is a bill filed by one of the heirs at law of an intestate, against the other heirs, seeking a decree for the sale of the real estate of that intestate, and a division of the proceeds. (The land

being incapable of division, and some of the heirs being infants.) After the filing of the bill, *Samuel H. Taggart*, the appellant, becomes entitled to the undivided share of *Thomas Calwell*, deceased, one of the children of the intestate, by a purchase under a decree, and this fact is stated in a supplemental bill, which is filed for the purpose of making said *Taggart*, a party to the proceeding. He now objects that the complainant produced no proof under the commission of this sale to him; to which we reply that the whole proceedings on the equity side of *Harford* county court, under which said *Taggart* became the purchaser, are specially referred to and *made part of the supplemental bill*, and would shew, if embodied in the record, as they should be, that said sale to *Taggart*, was made and reported under oath by the trustee, and confirmed by the court.

(The appellee could here take occasion to suggest a diminution and defect in the record in this particular, in not setting forth the judicial proceedings thus referred to.)

The supplemental bill thus setting forth this judicial sale, certainly presents such a *prima facie* proof of the fact of sale as will suffice at least, until there is a denial of it by some of the parties interested. Instead of there being such a denial, it will be observed, that the only parties interested in the fact of this sale to *Taggart*, have answered the bill and disclaimed all interest in the subject matter of the suit, *expressly on the ground that this sale to Taggart had taken place.* See the answers of the children of *Thomas Calwell*.

The next defect in the complainant's proof which the appellant undertakes to specify, is that we have failed to prove *title* in the intestate, or to prove that the parties to the bill are his heirs at law. Admitting that we are to prove all the *material* allegations of the bill, yet certainly in the absence of all *denial* of any of those allegations, the *description* of proof by which these averments are to be sustained, will not be required to be *strictly, full and conclusive.* The bill alleged that *Samuel Calwell* died seized of certain real estate—that it descended to a number of heirs at law, some

of whom are infants—that it is wholly incapable of division, and that it would be beneficial to all, if the same were sold and the proceeds divided; and we think that a recurrence to the testimony under the commission will shew these allegations to have been all proven. *Bussey*, one witness, proves that the intestate owned the land for a long time during his life; that he *died seized of it*, and his widow afterwards continued in possession until her death.

It certainly cannot be necessary in a case like this, (as the appellant seems to intimate) that a complainant should produce *strict proof* of title, deducing it from the *State* to the party last seized, as though he were tracing title in an action of ejectment.

The bill does not contemplate any adversary titles, but is simply to procure a sale and division of property in which all the parties have a *concurrent interest ;* and having proved that the ancestor owned and died seized of the land, is certainly sufficient to entitle the heirs to a division or sale, at least, until an adversary title is in some manner set up.

The testimony of *Theodore Boyer*, who proves that the parties named in the bill are the heirs at law of the intestate, is next objected to on the ground, that he is one of the defendants, and has been examined without an order for that purpose. To this it may be first replied, that he does not prove himself one of the defendants, nor is there any thing in the record to shew that this witness and one of the defendants is the same person. But if it were so admitted, still we say it is no cause to reverse the decree, because when the proceedings should come before the auditor for distribution of the proceeds among the parties, it would then be the proper time to take proof as to the claims of the heirs or parties entitled, so that no possible injury could result from the admission of this testimony. And as it regards his examination without the order of the court, as there is nothing to discredit or throw suspicion on his testimony, it will not, as we apprehend, be now rejected, if the court are satisfied that an order *would* have passed for that purpose,

upon application. The principle being that where acts are done *bona fide*, for the doing of which an order would on application have been passed, they shall be regarded in the same light as if an order had previously been obtained. *Lee and others vs. Stone and McWilliams*, 5 *Gill and John.* 1.

The *second* objection urged by the appellant assumes what I think is not the fact, viz : that there is no answer for *Samuel Calwell*, one of the infant defendants.

The return of the commissioner appointed to take the answer of this and the other infants, expressly states, that he has taken the answer of *Samuel* and the other infants, and annexed them to his return. The guardian in reciting the names of the infants, does, by what is evidently a mere slip of the pen, use the christian name of *William*, in the place of *Samuel.* This is palpably a mere clerical error, for by so doing it will be seen that he uses the name of *William twice*. But the guardian himself expressly declares, that he answers as guardian for *all the infant children* of *Thomas Calwell*, one of whom is the said *Samuel*, as it appears by the proceedings ; the error is merely in writing the christian name of one child for the other, as it will be hardly supposed there were two of the *same name*.

The *third* objection is also founded on a false hypothesis, viz : that the order for the *ex parte* commission issued before the *rule answer* expired. The county court as courts of equity, are authorized by act of Assembly to hold *intermediate* chancery terms, to which process is returnable, and to which by our invariable practice all such rules operate ; and although it may be said there is nothing in the record to shew this practice, yet we may well reply that the burthen is on the *appellant* to shew that by the practice or the rules of the court the *rule answer* in this case extended as is alleged to August, and had not expired at the June term, when the interlocutory order passed. More particularly is it incumbent on the appellant to shew this, when the order itself states as it does, upon its face that *all the defendants were in default*.

The *fourth* objection is, that no notice was given to the

absent defendants to answer the *supplemental* bill, and that the infants have not answered said bill.   To this we reply, that the supplemental bill was of such a character and for such a purpose as to require no answer from any except *Samuel Taggart*, the new party created by that bill.   Its sole object, as is apparent, was to make said *Taggart*, (who acquired an interest after the suit commenced) a party to the bill.   The same end might perhaps have been answered by an order to amend, but whether proposed in the one way or the other, its object being obviously merely to make a new party, having no relation to any other matter, and not at all affecting the substance of the bill, there was no necessity for a new order of publication as to the absent defendants. Whilst as it regards the infants (if there was any thing in the objection,) it will be seen that they do in effect answer both the original and supplemental bill; their answer coming in long after the filing of the supplemental bill, and all of them except one (*Laura Calwell*) expressly disclaiming all interest on the *very ground of the sale to Taggart*, which is the only fact stated in the supplemental bill.   But that there is no necessity that the other defendants should have answered the supplemental bill, will be fully seen by reference to the authorities, which expressly hold, that where *it is merely used for the purpose of bringing in a new party, the defendants to the original bill need not be made parties.   Ensworth vs. Lambert, et al*, 4 *John. Ch. R.* 604.   6 *Ib.* 450.

The *fifth* and last objection is, that the commission issued to take the answer of some of the infants before they were summoned.   In so doing there is nothing contrary to the practice in chancery upon that subject, on the contrary, I think it is generally conformable to that course.   In *England*, the practice once was and may still be, whenever the infant was in the kingdom to bring him *personally* before the court, and have his answer taken there; but with us the practice has been invariably different, and there exists no necessity for summoning him at all, if he appears and becomes a party regularly without a summons.   And here there would appear

to be still less reason for the previous summons; as all the infants mentioned in the objection disclaim all interest in the suit, which is also manifest from the proceedings exhibited.

The authorities warrant this practice in relation to taking the answers of infants, as will be seen by reference to *Banta vs. Calhoon*, 2 *Marsh*. 167. *Pendleton vs. McCroy*, *Dick*. 736. Before concluding these notes I would further suggest, that there does not appear to have been an appearance entered for any of the defendants except *Taggart*, and who would of course be the *sole appellant*, which is in strict accordance too with the fact; the record up to this day shewing no appearance for any of the other defendants—which being the case, several of the objections urged by the appellant, as they have no relation to *his interests*, could not be regarded, it being established that the appellate court decrees only in relation to the rights of those who are properly parties to the appeal. In fact, if I may be permitted the remark, the appeal itself presents rather the appearance of an unnecessary and vindictive proceeding, inasmuch as if the defendant, *Taggart*, or any other was prejudiced by the interlocutory proceeding, based upon his default, he could have come in, and if he had any defence might have been permitted to exhibit it, instead of which, without even to this day opposing any denial to the claims of the bill, he seeks to embarrass it by the prosecution of this appeal.

DORSEY, Judge, delivered the opinion of the court.

The reversal of the decree in this case has been claimed on five distinct grounds. The *first* of which is, because there is no proof of the material allegations in the bill. The alleged defects in the testimony are first, that there is no proof whatever of the sale to *Taggart*, one of the defendants. The object of the bill filed in this case is to obtain a decree for the sale of a tract of land called the *Grove*, whereof *Samuel Calwell* died seized and intestate, in order that by the future decree or order of the court, the proceeds of sale might be distributed amongst those entitled thereto. To

enable the. court to pass such decree it is necessary that it should appear, that all persons having an interest in the land are parties to the suit ; that they may have an opportunity of protecting their interests and shewing cause, if any they have, why a sale should not be decreed.    It is not pretended that there are any parties in interest, who are not made parties to the suit; nor has the decree finally adjudicated upon the extent of the rights of any of the parties.    It simply provides for a sale of the land, and that the money arising from such sale be brought into court for distribution.    It has adjudged no part thereof to be paid to *Taggart,* or to any body else.    All and each of the appellants had an opportunity afforded them of coming into court, and shewing cause against the passing of such a decree.    Having failed to do so, it forms no objection to the decree that the interest of *Taggart* has not been sustained by proof.    The decree is equally necessary and just, whether the title of *Thomas Calwell,* to one-fourth part of the *Grove,* remains in his descendants named in the original bill or vested in *Taggart,* as stated in the supplemental bill.    If *Taggart* has no interest in the property, he has sustained no injury from the decree.; and has neither motive or right to ask its reversal.    It not being recognized by the decree, the other defendants have no pretence for complaint that sufficient proof has not been adduced to sustain it.

The *second* alleged defect in the proof is, that no title in the property in question has been shewn in the parties litigant in this cause.    If this allegation were true, that the decree was erroneous could not be denied.    It must be borne in mind in considering this objection, that the title to the *Grove* does not appear by any proceeding in the cause to have been put in issue or in any wise controverted ; on the contrary according to the statements in the bill, the title of all the parties was deduced from *Samuel Calwell* the intestate.    The only testimony offered on this subject was that of *Edward F. Bussey,* who deposed, that he knew the land whereon the said *Samuel Calwell,* deceased, formerly lived, which depo-

nent understood was called the *Grove*; that said *Samuel Calwell*, now deceased, owned and held the said land for many years before his death, and died seized of the same, and that his widow continued to hold possession and occupy the said land for many years after the death of her said husband. This proof in such a case we think sufficient *prima facie* evidence of title in the parties in this cause, upon proving themselves the heirs of the intestate, to sustain the jurisdiction of the court over the subject matter.

The *third* defect in the proof which the appellants rely on is, that there is no proof that the persons named as heirs of *S. Calwell* are his heirs, except that given by *Theodore Boyer*, who it is objected is a party to the suit, and has a direct interest in the testimony he gave, which proved that the deponent was one of the heirs of *Samuel Calwell*, deceased. This exception to the testimony of *Boyer*, if interested as stated, if taken at the proper time and place would have been conclusive against its reception. But it now comes too late. By the fifth section of the act of 1832, ch. 302, it is enacted, that hereafter in all causes in the court of Chancery or any county court as a court of equity, all objection to the competency of witnesses, and the admissibility of evidence, shall be made by exceptions filed in the cause, and no point relating to the competency of witnesses or the admissibility of evidence shall be raised in such causes in the Court of Appeals, or noticed, or determined, or acted upon by the Court of Appeals, unless it shall plainly appear in the record, that such point had been raised by exceptions as aforesaid in said court of Chancery or county court. In this case no such exceptions were taken in the county court, and consequently they are inadmissible here. By connecting the testimony of *Theodore Boyer*, with the statements in the bill of complaint to which it refers, it does sufficiently appear who were at that time the heirs of *Samuel Calwell*, to remove any obstacle in this respect to the decree of the county court. The appellants then are not entitled to a reversal of this decree on their first ground.

The *second* ground assigned by them is, because there is no answer for the defendant, *Samuel,* who is alleged to be an infant.    The objection here raised, is founded on a manifest mistake in inditing the answer of the guardian to the minors, in which the name of *William,* one of the defendants is twice written, once by mistake for that of *Samuel.*    This fact is demonstrated by the return of the commissioner, the officer empowered by the county court to appoint the guardian to the infants and to take their answer, who certifies, that he appointed the said guardian to answer for all the infants, including the said *Samuel,* and that he had taken the answer of the said infants by their said guardian, which he enclosed with his certificate, and on which answer was indorsed the certificate of the said commissioner; that the guardian by him appointed to answer for *the above named infants,* had made oath before him, that the facts stated in the answer were true. Such an objection made at the time and under the circumstances in which this has been urged, we think cannot avail the appellants.

The *third* ground relied on by the appellants is, because the order to take the bill *pro confesso,* and to issue *an exparte* commission passed before the rule to answer expired.    We do not feel ourselves at liberty to say that there has been any irregularity in the passage of this order.    Neither the rules of *Harford* county court upon this subject, nor the time of holding its intermediate equity terms prescribed by law appearing before us; and the court certifying that the time to answer had elapsed, we will in the absence of all proof to the contrary assume the verity of their statement, and presume, that the order *pro confesso,* was legitimately passed. There is nothing in the record to shew, that the rule to answer extended to the August term.    It may by the rules of the court have been limited to some intermediate day, or to the intervening equity term of the county court.

There is nothing in the *fourth* ground on which it is sought to reverse this decree, to wit: that no notice was given to the absent defendants to answer the supplemental bill, nor

have the infants answered the supplemental bill. None of the descendants of *Thomas Calwell*, whose rights it is alleged in the supplemental bill had passed to *Samuel Taggart*, were absent defendants having an interest in the subject matter. It would have been idle to call on them to respond to it. The assertion that the infants have not answered the supplemental bill is not strictly conformable to the facts. Their answer is substantially a confession or reiteration of the allegations in that bill. But concede that the adult heirs of *Thomas Calwell* were all non-residents, and that the answer of the infants had been confined to the matters charged in the original bill; as concerns the present question it forms no objection to the validity of the decree. The supplemental bill was filed solely for the purpose of bringing in a new party in interest, and he alone should have been made to respond to it. *Ensworth vs. Lambert and others*, 4 *John. Ch. R.* 605, *and McGown and others vs. Yerks and others*, 6 *John. Ch. R.* 450. Suppose all the heirs of *Thomas Calwell* had answered the supplemental bill and denied every fact in it, it could avail them nothing. They could not have used their answers, no matter how responsive they might be to the matters charged in the bill, as evidence against the claims of the defendant, *Taggart.* As to him they were *res inter alios acta.* The answer of one defendant is not evidence against a co-defendant, even as to matters in contest between the complainant and such co-defendant; much less would it be so in the adjudication of conflicting claims between the defendants themselves.

The *fifth* ground on which it is insisted, that this decree should be reversed is, that a commission issued to take the answer of the infant defendants before any *subpœna* was served upon them. According to the well settled practice of the Chancery court of *Maryland*, the issuing and service of a *subpœna* always precedes the issuing of a commission to take the answer of infants. But the matter complained of is a mere irregularity in the process of the court, by which the parties were brought before it to contest their rights. It in no wise affects the principles of the decree, nor forms any

ground for its reversal.   The infant defendants by this departure from the usual course of making them parties to this suit, sustained no injury, were subjected to no inconvenience, were deprived of no right or advantage which they would otherwise have enjoyed.   They had the same opportunity of defending themselves by their answer, and protecting themselves from the relief sought by the appellee, as if their appearance in the county court had been affected by the usual course of proceeding.   This irregularity in the process of the court by which the defendants were made to appear to the suit, forms no ground for objecting to the validity of the decree.   At the proper time and for the appropriate purpose it might have been made the subject of a motion before the county court; but in an appellate court, it cannot be urged as a ground for reversing the decree.   The decree of the county court is affirmed with costs, both in this court and the county court, and the case is remanded to *Harford* county court, that such further proceedings may be had therein, as the nature of the case may require to do justice to the parties according to their respective rights and equities.

DECREE AFFIRMED AND CAUSE REMANDED.