# Rebecca A. F. Porter, Exc'x of Francis Earlougher, *vs.* Charles Timanus, and others.

An appeal from the orphans court must be taken within *thirty days* after the decree, order, decision or judgment appealed from was passed, as required by the act of 1818, ch. 204, otherwise the appeal will be dismissed.

Under the act of 1831, ch. 315, the orphans court is clothed with a *discretion* to pass an order requiring an executor to bring money in his hands into court, and, upon failure to comply, to revoke his letters, and when that court has exercised such discretion, its decision is *final*, and no appeal lies therefrom.

Notice of such order ought, in all cases, to be given to the party upon whom it is designed to operate, and he should be allowed his day in court to comply therewith.

Appeal from the Orphans Court for Howard county.

This appeal was taken on the 6th of March 1855, from several orders of the court below, passed in the matter of the estate of Francis Earlougher, deceased, of which the appellant was executrix.

By the will of the deceased, admitted to probate in 1849, he devised all his real estate to his executors and their heirs, in trust to sell the same, and, out of the proceeds, to pay his debts, and distribute the balance, after allowing his widow her thirds, among his children, in a specified manner. On the 7th of August 1849, letters testamentary were granted to appellant, who was the widow of the deceased, and one of the executors named in the will, and who proceeded to execute the trust by selling the personal and *real estate*, and passed several accounts in the orphans court. The real estate, consisting of a *farm* and a *house and lot*, were sold in March 1851, and April 1852, and these sales were reported to, and ratified by, the orphans court. The last account, which was passed on the 18th of July 1854, shows a balance due the estate of $3007.28.

On the 17th of October 1854, the appellees, who were legatees under the will, filed their petition in the orphans court, objecting to an alleged proposed distribution account, about to be made by the executrix, on the ground that she had not

Porter, Exc'x of Earlougher, *vs.* Timanus, *et al*

charged herself with certain specified debts due the estate, nor with any *interest* on the amount of sales, nor with the *rents* of the house and farm, from the death of the testator to the times of sale, and praying that the account may be rejected, and that the executrix may be required to pass an account charging herself with these matters, and then the balance distributed among the parties according to their respective interests. This petition the executrix, having been duly cited, answered, insisting that she ought not to be charged with any of the matters referred to therein, for reasons which are stated at length in her answer.

Afterwards, on the 2nd of January 1855, as the record states, the *parties, by their attorneys,* again *appeared in court,* and oral testimony was taken as to the annual value of the house and farm, and, on that day, *two orders* were passed by the orphans court. The *first,* which purports to have been passed "in the matter of the petition of" the appellees, *adjudges* that the executrix "is answerable for all interest received, and for the interest due on notes or bonds, from the date of their maturity," and for the rent of the house and farm for two years, at the rate of $100 per year for the former, and $200 per year for the latter, and *orders* her to "pay or bring into this court the sum of $600, for rents received by her for the farm and house, before the sales thereof, and all the interest received by her, or properly chargeable on the amount of the said sales of the said house and farm." The *second order,* which purports to have been passed "on the application of" the appellees, directs the executrix to "bring into this court, on or before the 16th day of January 1855, the sum of $3007.28, being the balance appearing to be due on the last account passed therein by her." On the same day (2nd of January 1855,) the court ordered a summons to be issued to the executrix to appear in court on the 16th of January 1855, "to show cause, if any she have, why the assets in hand should not be distributed," and the summons, which is set out in the record, and was duly served, is to the same effect, with the additional words "as directed in the order of said court passed this day."

On the 20th of February 1855, the court, at the instance of

the appellees, passed another order directing the executrix to "bring into this court, under an order of the said court of the 2nd day of January 1855, on or before the 6th day of March 1855, the sum of $3007.28, being the balance appearing to be due on the last account passed therein by her, otherwise this court will revoke the letters of the said executrix, and appoint an administrator from among the legal heirs." On the 6th of March 1855, the executrix having failed to comply with these orders, the court passed an order revoking her letters, and appointing an administrator in her place, and on the *same day* she, by her attorney, prayed "an appeal from the orders and decrees of the said orphans court, as aforesaid rendered in the premises."

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Wm. Schley* for the appellants:

1st. The order of the 2nd of January 1855, was erroneous, 1st, because it declares that the executrix is answerable for the interest *due* on notes or bonds from their maturity. 2nd, because it charges her, as executrix, for the use and occupation of the farm and house. 3rd, because it requires her, as executrix, to bring into court $600 for rents, and $3007.28 for distribution.

2nd. The order of the 20th of February 1855, is erroneous, 1st, because it is founded on the erroneous order of the 2nd of January 1855. 2nd, because it orders the fund to be brought into court *for distribution.* 3rd, because it determines *ab ante* that failure to comply shall *ipso facto* be a ground for revocacation of her letters.

3rd. The order of the 6th of March 1855, was erroneous, 1st, because no notice was given to the appellant of the exigency of the order of the 20th of February, and she was not present or represented either when that order or the order of the 5th of March was passed. 2nd, because the failure to bring the fund into court *for distribution,* was not a ground on which her letters ought to have been revoked.

By the will of the testator, his real estate was directed to be sold, and *when sold*, the proceeds were properly personal estate, the conversion to that extent being effected by the will. But *until the power of sale is exercised*, the real estate technically descends to the heirs, and subsists as real estate until converted by actual sale, or, by the exercise of the power the estate which so descended to the heirs is divested; but the intermediate profits are the issues and profits of *real estate*, and belong to the heirs, *qua heirs*, and not to the legatees under the will. Whether a court of chancery would, in case of unjustifiable delay, appoint a receiver, is not involved in this inquiry, but clearly the orphans court has no general jurisdiction over trusts. 4 *Md. Ch. Dec.*, 425, *Conner vs. Ogle*. It would seem, therefore, an error to require her to account, as executrix, for the farm and house which she occupied up to the time of sale.

Again, by the order, she is not only required to account for interest *received* by her, but is made answerable for interest *due* on notes and bonds from the date of their maturity. By the *terms* of this decree she is made answerable for *more* than she has received—for what is still *due*, and which may *never* be received. This is clearly erroneous.

Again, by what authority does the orphans court call in *money* for distribution in a case where the executrix did not ask the assistance of that court? There are many provisions which relate to cases of proposed *investments* of money; and provisions which relate to cases of apprehended *loss*; and provisions which relate to distribution of a surplus or specific articles. The act of 1810, ch. 34, sec. 5, relates to property in kind, and the case of *Williams vs. Holmes*, 9 *Md. Rep.*, 281, was a case of distribution *in kind*. By the act of 1798, ch. 101, the application of the administrator to the orphans court, was the condition on which the court could make the distribution, (sub. ch. 11, sec. 16,) and by sub. ch. 14, sec. 12, an executor may appoint a meeting of parties interested for distribution, and on a day approved by the court, "payment or distribution may be made under the direction and control of the court." But is the administrator *bound* so to apply?

more especially is an *executor* bound so to apply? The testamentary bond is liable for any default, and a court of chancery may take jurisdiction under certain circumstances. But a legatee cannot collect his legacy, whether specific or residuary, through the orphans court. That court cannot exercise the functions of a court of law.

Now the right to the office of executrix is a vested right, and is protected by law, and no one clothed with that office can be deprived of it, unless upon justifiable cause. And unless the court had jurisdiction to make distribution of the residue, *as a matter of judicial right* on the promotion of the legatees, *her failure* to comply with the order of that court was no justification for the revocation of her letters. Besides this, she ought to have had notice, by citation or service, of the exigency of the order of the 20th of February 1855, and as none was given her, she was not even guilty of *contempt*, much less of default.

*Oliver Miller* for the appellees:

1st. There were *two separate* orders passed on the 2nd of January 1855, and if there was any error in either of them, an appeal should have been taken therefrom within the *thirty days* required by law for appeals from all orders and decrees of the orphans courts. The appeal is given by the act of 1818, ch. 204, sec. 1, upon the express *condition* that it shall be taken within thirty days; the words are, *"Provided* such appeal be made within thirty days after such decree, order, decision or judgment." The appeal on the 6th of March 1855, was *too late*, and cannot open for review either of these orders.

2nd. But suppose they are open, there certainly is no error which this court can review, and none in law in the *second order*, requiring the balance on the last administration account to be *brought into court*. It simply directs the executrix to bring the money *into court;* it does not say it is to be brought in for the *purpose of distribution*. That the orphans court had the power to pass this order, is clearly shown by the act of 1831, ch. 315, secs. 4, 5. These sections expressly declare that the orphans courts are "authorized and empowered, in

their *discretion,* and whenever to them it shall seem proper, either *ex officio* or upon *application,* to order any executor to bring into court, or place in bank, or invest any money or funds received by such executor," and further, that such money or funds "shall at *all times* be subject to the order and control of such court." The case of *Ex-parte Shipley &amp; Wife,* 4 *Md. Rep.*, 493, decides that when the court has exercised the *discretion* committed to them by this act, their decision is final, and no appeal will lie. See, also, 6 *Md. Rep.*, 552, *Falconer vs. Regelier.* But if the exercise of this discretion is, in this case, subject to review, what is there to show there was not a sound judicial exercise of the authority? The real and personal estate had been sold and converted into money *years* before the order was passed. This money was, by the account of the executrix, admitted to be in her hands, and she is ordered to bring it into court. It was an order which it was the *duty* of the court to pass, and too great forbearance was shown the executrix in not revoking her letters *immediately* upon her failure to comply with it. It was passed on the 2nd of January, on a day when she, by *her counsel, was in court,* and, of course, had *actual notice* thereof. It gave her till the 16th of January to bring in the money, which is certainly a *"reasonable time"* within the meaning of the act of 1831, already referred to. For her failure to comply with this order, the court would have been justified in revoking her letters at once.

3rd. The order of the 20th of February is the *first* in reference to which the appeal is *in time.* Several objections are made to this order. 1st, it is said to be founded on the erroneous order of the 2nd of January. But it is founded on the *second order* of that date, which the court had the clear right to pass under the act of 1831; it does not profess to be founded on the *first order* of that date, which has reference to the *rent* and *interest.* 2nd, it is objected that it orders the money to be brought in *for distribution.* This is a mistake, for the order says nothing in regard to the *purpose* for which the money was to be brought in. 3rd, another objection is, that it determines *ab ante* that a failure to comply shall *ipso facto* be a

ground for revocation of letters. But in this respect the order is a *simple warning* that the court will do that which the act of 1831, ch. 315, secs. 4, 5, says it *may do*. This act does make a failure to comply with such an order *ipso facto* a ground for revocation of letters. It says, that if an executor "shall not, within a reasonable time to be fixed by the court, comply with the order of the court to bring the money into court, the letters testamentary granted to such executor may be revoked by the court." It is true the court need not have inserted this warning in their order, for the executrix was bound to know that the law imposed this penalty for her neglect, but it can surely be no valid objection to an order that it says the court will do that which the law says they may do, and especially not in this case, where the executrix had failed to comply with a previous order to the same effect. This, then, was an order which, like the previous one, the court had the clear right to pass in its discretion, and *ex officio* without motion or application, one which it was proper for the court to pass, in order to secure the safety of the fund; and, in short, one which the court passed in the exercise of a *sound discretion*, and, therefore, not the subject of review by this court.

4th. The order of the 6th of March properly revoked the letters. It was a clear case of an executrix failing to obey *two separate orders*, which the court had a clear right to pass, and the penalty for which is equally as clearly defined by the act of Assembly. It is objected that she had no notice of the order of the 20th of February, and was not present or represented when it was passed. But she was present and represented by *counsel in court*, when the order of the 2nd of January, directing her to bring this very money into court, and the failure to comply with *that order* for so long a time, was a sufficient reason for the passage of the order of the 6th of March, without the intervening order of the 20th of February. It is submitted, further, that there is nothing in the act of 1831, requiring *notice* of such an order to be given, and every executrix is *bound* to *take notice* of all orders passed by the court, in reference to the administration of the estate, just as parties to a case

37    v. 12.

in chancery are bound to take notice of all orders passed in the progress of the cause.

If the above positions are correct, the appeal must *be dismissed.* But even if the *first order* of the 2nd of January is open for review here, then it is submitted there was no error in it. The act of 1831, ch. 315, converts real estate directed by will to be sold, into assets, requires the sale to be made under the direction of the orphans court, in the same manner as sales are made under decrees in chancery, and makes the bond of the executor responsible "to the same extent and in the same manner" for the proceeds of such real estate "as if it were personal estate in his" hands. In construing this law, this court, in *Dent vs. Maddox,* 4 *Md. Rep.,* 530, say: "The proceeds of such sales are to be accounted for, in the orphans court, in the same manner as the sales of personal estate." The orphans court being, then, the proper accounting *forum,* for what is the executrix responsible? For the interest on the bonds taken for the purchase money, she must, of course, account, so far as she has *received* it. She took securities, bearing interest, for the credit payments on these sales, and she received the cash payments, and for several years retained the money in her hands, applying no part of it to the payment of the debts of the estate. The case, so far as interest on the cash payments is concerned, clearly comes within the principle decided in *Mickle vs. Cross,* 10 *Md. Rep.,* 352. As to the interest due, which she ought to have received, if she did not, this court, in the case of *Dent vs. Maddox,* has said: "It is the duty of a trustee to collect the proceeds of sale, or show why he does not, and if he fails to do this, he must be dealt with as if they had come to his hands." The executrix here is to account in the same manner as a trustee would in chancery, and not having shown that she did not receive the money when due, nor why she did not, she must be charged with interest as if she had received it. On this point see, also, 4 *G. & J.,* 453, *Gwynn vs. Dorsey;* 3 *G. & J.,* 20, *Wilson vs. Wilson.* She is also responsible for the *rent* of the house and farm whilst she occupied and neglected to sell them. The will, in this case, does not simply contain a direction to sell,

but is a devise to the executrix and her heirs, in trust, to sell, so that the legal estate does not descend to the heirs, but vests in the executrix, and the intermediate rents and profits belonged to her, and must be accounted for. Moreover, the act of 1831, and the authorities already referred to, work a conversion from realty to personalty, or, in other words, convert the real estate directed to be sold into assets, from the moment the will is admitted to probate, and letters granted to the executor. It then becomes personal estate, and for the rent the executor is just as much responsible as for the hires of negroes belonging to the estate.

Nor is it admitted that the orphans court had no power to order the money to be brought in upon application of the distributees, for the purpose of distribution. By the act of 1798, ch. 101, sub-ch. 15, sec. 1, the power is expressly conferred upon the orphans court of "superintending the distribution of the estates of intestates, and securing the rights of orphans and legatees." Sub-ch. 11, makes it the *duty* of the administrator to distribute, and sec. 16 of that sub-ch., provides, that in case the distributees object to the distribution, (as was done here,) the court may direct a sale, for the purpose of distribution. Here, all the property had been sold by previous orders, and the balance in hand consisted of money. See, also, sub-ch. 14, sec. 12, and 3 *Bland,* 184, *Hewitt's Case,* and 9 *Md. Rep.,* 281, *Williams vs. Holmes.* It is not necessary that the executor should signify his assent or readiness to make distribution, or apply to the court for that purpose, before it can act. The application may be made as well by distributees and legatees, and there are many cases in our courts in which they have made applications to compel the executor to make distribution; the case of *Cassilly & Wife, vs. Meyer,* 4 *Md. Rep.,* 1, is such a case. Besides, it must be remembered that this money is the proceeds of real estate sold by the executrix under the act of 1831, and in reference to it, for all purposes, the orphans court have, by that act, and the decisions of this court above referred to, the same authority as a court of chancery would have, in case the property had been sold under a decree in chancery.

BARTOL, J., delivered the opinion of this court.

This is an appeal taken on the 6th day of March 1855, from several orders and decrees of the orphans court for Howard county.

The record shows that there were two orders passed on the 2nd of January 1855. These are not open for review under this appeal, and as to them the appeal must be dismissed, on the ground that it was not taken in thirty days, as required by the act of 1818, ch. 204, sec. 1. The words of the act are: "Provided such appeal be made *within thirty days after such decree, order, decision or judgment.*"

One of the orders passed on the 2nd day of January 1855, required the appellant to bring into court on or before the 16th day of January 1855, the sum of $3007.28, being the balance appearing to be due on the last account passed therein by her.

On the 20th day of February 1855, another order was passed requiring the executrix "to bring into this court, under an order of said court of the 2nd day of January 1855, on or before the 6th day of March 1855, the sum of $3007.28, being the balance appearing to be due on the last account passed therein by her, otherwise this court will revoke the letters of said executrix, and appoint an administrator from among the legal heirs."

And on the 6th of March, the day limited in the previous order for the money to be brought into court, the executrix having failed to comply, the said court passed an order revoking her letters, and appointing an administrator in her place.

The appeal was taken within thirty days after these last two orders, and would bring them before us for review, if they were of such a nature as to be proper ground for appeal. But this court has decided, in *Ex-parte Shipley & Wife,* 4 *Md. Rep.,* 496, that, under the act of 1831, ch. 315, sec. 4, the orphans court is clothed with a discretion to pass such orders, and when it has passed upon such an application, its decision is final, and no appeal will lie. It is true that the power vested in the orphans court by the act of 1831, is to be exercised with a sound, legal discretion, and not capriciously or arbitrarily. And in the case before us, even if it were proper to entertain

the inquiry, we can discover no evidence of such arbitrary exercise of the discretionary power, as alleged by the appellant's counsel. It is objected that the order of the 20th of February was erroneous, because it was founded on the order of the 2nd of January, which, it is alleged, ordered the fund to be brought into court *for distribution.* Without expressing any opinion upon the question of the powers of the orphans courts to order funds to be brought in for distribution, it is sufficient, for this case, to say that there were two orders passed on the 2nd of January. The particular order of that date, on which that of the 20th of February was founded, and to which the latter refers, did not order the fund to be brought into court *for distribution,* but simply ordered the executor to bring it into court. Nor did the order of the 20th of February determine *ab ante* that a failure to comply should *ipso facto* be a ground for a revocation of the letters. The act of Assembly declares that the orphans court may revoke the letters on a failure to comply with such order within a reasonable time; and although it was not necessary to admonish the executrix, in the order, of the possible consequence of her contumacy, such a warning did not render the order erroneous.

To the order of the 6th of March, it is objected that no notice was given to the appellant of the exigency of the order of the 20th of February. But the record shows that she was in court, represented by counsel, when the order of the 2nd of January was passed, which required her to bring the money into court, and the failure to comply with such order, was a sufficient reason for a revocation of the letters, without the intervening order of the 20th of February. Notwithstanding the suggestion by the appellees' counsel, that no notice of such an order is required by the terms of the act of 1831, and that none is necessary, we are of the opinion notice ought, in all cases, to be given to the party upon whom the order is designed to operate, and that he should be allowed his day in court to comply with its exigencies, or to show cause to the contrary before the revocation of the letters. But, in this case, we consider ample and complete notice was given, and that the orphans court acted with sound and judicious discretion in the premises.

Although .none of ·the orders appealed from are properly before us for review, we have deemed it proper to notice the objections urged by the appellant.

In deciding that no appeal lies from the order of the 6th of March, revoking the letters, we must be understood as confining our judgment to such an order passed under the act of 1831. This is a proceeding under that act which we have said vests a discretion in the orphans court.

*Appeal dismissed.*

(Decided July 20th, 1858.)