(Decided April 28th, 1859.)

---

# JEREMIAH WAMPLER *vs.* JOHN WOLFINGER and ABRAHAM STRITE.

A bill filed by a lunatic and his committee to vacate a deed of real estate, as being fraudulently obtained from the lunatic, charged, among other allegations, that the consideration set forth in the deed was fraudulent and merely pretended, and even if it was paid by the grantee to the lunatic, it was wholly inadequate, and, by fraudulent devices of the former, was extorted and taken from the latter, and he was altogether deprived thereof. On this bill a decree *pro confesso* was passed, vacating the deed, directing the real estate to be sold, and ordering the defendant, the fraudulent grantee, to account for the issues and profits of the land. Upon appeal from this decree by the defendant; HELD:

1st. The bill being taken *pro confesso*, its allegations negative the presumption that the appellant either paid, or secured to be paid, any thing as purchase money, and he has, therefore, no right to have the cause remanded for the purpose of allowing him to be reimbursed on account of purchase money.

2nd. The decree is not objectionable, because it charged the appellant with the issues and profits of the land.

3rd. The appellant cannot ask a reversal of the decree, upon the ground that the allegations of the bill were not sufficient to authorise a sale of the lunatic's real estate, such error, if it exists, being *no injury to the appellant*.

4th. The appellant having appeared to the bill and failed to answer, he was entitled to *notice* of the order for taking the bill *pro confesso*, previous to the passage of the final decree, and such order not containing a proviso, that a copy thereof be served on the defendant, or left at his

43     v. 13.

usual place of abode, before a day certain, for such error the decree must be reversed.

5th. But, notwithstanding this reversal, the rights of the *purchasers* of the land under the decree, are not to be affected, but are to be held as good and valid as if the decree had been affirmed.

APPEAL from the Equity Side of the Circuit Court for Washington County.

The bill in this case was filed on the 25th of October 1856, by Wolfinger, a lunatic, and Strite, the committee of his person and estate, against the appellant, and alleges, in substance, that Wolfinger having been, from nativity, of weak and unsound mind, was seized and possessed of about fifty-nine acres of very valuable land situated in Washington county, and of considerable personal estate, but becoming subject to the undue influences and fraudulent impositions of the defendant, he was, on the 10th of May 1851, induced thereby to execute to the defendant an absolute deed of all his land and real estate, "for the stated and pretended consideration of $3523.50, but which said consideration, stated and set forth in said deed, is, in fact, fraudulent and merely pretended, and even if the said stated consideration was paid by the said Wampler to the said Wolfinger, it was wholly inadequate, and by the fraudulent devices and contrivances of the said Wampler, it was extorted and taken from the said Wolfinger, and he was altogether deprived thereof;" and that, ever since the date of this deed, the defendant has been in the exclusive possession of this land and real estate, receiving and enjoying the issues and profits thereof, against right and conscience.

The bill further alleges, that by the same fraudulent imposition and wiles, Wolfinger was induced to give to Wampler, or to his family, all his personal estate, without consideration; and that afterwards a writ *de lunatico inquirendo* was issued, under which an inquisition was taken, by which it was found, that Wolfinger, at the time of taking it, (12th of April 1855,) was a lunatic, and had been such from his nativity; and that this inquisition was duly confirmed, and the complainant, Strite, appointed committee of his person and estate; and that having been so deprived of his property, the lunatic has not

now, and has not had for some five years past, any means of support or of paying the costs of the said inquisition.

The prayer of the bill is, that the deed for the land may be vacated and the land restored to Wolfinger, or decreed to be sold and the proceeds applied to pay the costs of the inquisition, and procuring necessaries for the lunatic, and the residue invested under the direction of the court; and that the defendant, Wampler, may account for the issues and profits of the land, and also for all moneys and other personal property he may have received or obtained from Wolfinger, and for general relief.

The proceedings in lunacy, and the deed, were filed as exhibits with the bill. The defendant being summoned, appeared by counsel, at November term 1856, and the case was continued to the February, and then to the March term 1857, when an attachment was issued against him for default of answer, returnable at the July term, which was duly returned, "attached;" and on the 15th of July 1857, the court, (PERRY, J.,) on application of the complainants, passed an order, in which, after reciting the appearance and failure to answer, and the attachment and its return, it is then ordered, "that said defendant, Wampler, put in a good and sufficient answer to the said bill of complaint, or plead or demur to the same, on or before the fourth day of the next term of this court, (the same being the 30th day of July instant,) or otherwise, upon failure thereof, this court will, upon application of the said complainants, proceed to take the said bill of complaint *pro confesso*, or direct a commission to issue for taking depositions, and will finally decree in the premises, as to this court shall seem consistent with the established principles of equity, in the same manner as if the said defendant had appeared and answered, and depositions had been taken in the usual way."

At the next term, and after the lapse of the time limited by the aforegoing order, the defendant having failed to answer, plead or demur, the court, on the 24th of August 1857, passed a decree taking the bill *pro confesso*, setting aside and vacating the deed, directing the real estate to be sold, and the

proceeds brought into court, and appointing a trustee for that purpose, and ordering the defendant to account for the issues and profits of the land, and referring the case to the auditor to state the account, upon proof to be taken before him by both parties.

The land was sold, by the trustee, on the 5th of January 1858, the sale duly reported, and finally ratified in March following, and on the 19th of April 1858, the defendant appealed from the decree of the 24th of April 1857.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*A. K. Syester* for the appellant, argued:

1st. That the decree is erroneous, in not providing that the proceeds of sale or any part thereof should be applied to reimburse the appellant for any money *bona fide* paid by him on the purchase, and in making no provision by which such reimbursement can be had. In the case of *Long vs. Long*, 9 *Md. Rep.*, 348, a case very similar if not identical with the present, this court has held, that the party was entitled to be reimbursed for any money he may have paid the lunatic on account of the land. That authority, it is submitted, must govern this case.

2nd. That the decree is erroneous in directing a sale of the land under the averments of the bill, and the facts as disclosed by the record. Under the acts of 1828, ch. 26, 1829, ch. 222, and 1833, ch. 150, a court of equity can only direct a sale of the real estate of a lunatic, on the application of his trustee or committee, upon its *appearing* to the satisfaction of the court, that such sale is *necessary* for the maintenance of the lunatic or the payment of debts. This bill does not distinctly aver, that a sale is necessary for the maintenance of the lunatic, or that it will be for his interest or the interest of the estate to sell. It does not refer to any other debt than the costs of the inquisition, nor does it aver, that the annual issues and profits are insufficient for these purposes. But if the averments of the bill are sufficient, they are wholly unsupported

by proof.   No testimony was taken, and there is no proof that the lunatic is without support unless a sale is made, or that the issues and profits are insufficient for his maintenance after the payment of the costs of the inquisition.

3rd. That the decree is also erroneous, because the *order* for taking the bill *pro confesso*, and requiring an answer by a certain day, was never served on the defendant, and contains no provision, that *notice* of it should be given him, and he had, in fact, no notice thereof.   12 *Md. Rep.*, 293, *Porter vs. Timanus*.

*R. H. Alvey*, for the appellee:

All the presumptions are in favor of the correctness of the proceedings, and to induce this court to reverse the decree, the error must be manifest on the record.   4 *Md. Rep.*, 493, *Ex-parte Shipley & wife*.   6 *Md. Rep.*, 347, *Lowe vs. Lowe. Ibid.*, 359, *Alexander vs. Macauley*. It must appear, not only that there is manifest error, but this court must be satisfied, from an inspection of the record, that the appellant has rights involved which have not been properly regarded or disposed of by the decree, before he can successfully ask a reversal on this appeal.   He has no right to complain of error that does not affect himself.   8 *G. & J.*, 136 *Calwell vs. Boyer*.   6 *Md. Rep.*, 397, *Pratt vs. Johnson*.

Upon the return of the attachment, the party being in contempt of court in not answering the bill, the proceeding to take the bill *pro confesso* was regular and legal, (Act of 1799, ch. 79.)   The statements and recitals in the order, limiting a day for the defendant to answer, are all to be taken as true, nothing appearing to the contrary.   (8 *G. & J.*, 136, *Calwell vs. Boyer*.   9 *G. & J.*, 57, *Fitzhugh vs. McPherson*.   8 *Pet.*, 262, *U. S. Bank vs. White*.)   Nor is there any force in the objection, that this order was not served on the defendant, or that he had no notice of it.   The Act of 1799, ch. 79, does not require such notice to be given.   It says nothing upon the subject, and moreover, the defendant has *appeared*, was represented by counsel in court, and was, therefore, bound to take notice of all orders passed in the progress of the cause.

The bill having been taken *pro confesso*, all its charges and allegations are admitted to be true, so far as the particular case may require the admission. The court decrees upon it as if depositions had been taken, and the allegations were all fully proven. 10 *G. & J.*, 109, *Gibson vs. McCormick. Ibid.*, 480, *Luckett vs. White.* 3 *Gill*, 429, *Fitzhugh vs. McPherson.* This being so, the question is, does the case, as stated in the bill, justify such a decree as was passed?

Apart from all question of actual fraud practiced by the appellant in obtaining the deed, the subsequent inquisition finding Wolfinger, the grantor, to have been from his nativity of unsound mind without lucid intervals, so that he was not sufficient for the government of himself and his estate, is, at least, *prima facie* evidence of the invalidity of the deed, even as against strangers, because of mental imbecility. Though the deed may not be absolutely void, yet it is voidable, and upon proceeding for that purpose, after such a finding by inquisition, the deed would be set aside, as a matter of course, in the absence of facts to rebut the presumption of incompetency. 4 *Rawle.*, 234, *Hutchinson vs. Sandt.* 5 *Halsted*, 217, *Den. vs. Clark.* 6 *Wend.*, 497, *Hart vs. Deamer.* 5 *Paige*, 242, *In re. vs. Christie.* 1 *Md. Rep.*, 32, *Key's Lessee vs. Davis.* But when the fact of the mental incompetency of the grantor is connected with the other admitted facts charged in the bill, the case becomes one of the most unmitigated and detestable that could be stated. Fraud, under the most palliating circumstances, and as against those best able to guard against it, is odious in the eyes of the law, and especially so to a court of equity, but when it is perpetrated upon the poor afflicted imbecile, taking the advantage of his misfortune, it is made doubly atrocious, and the author of it should be made to abide the severest principles of retributive justice. This is the doctrine upon which courts of equity proceed in such cases. 1 *Story's Eq.*, secs. 227 to 229. 2 *H. & J.*, 421, *Reinicker vs. Smith.*

In what particular can the appellant pretend he is aggrieved by the decree of the court below? Conceding the deed to be fraudulent in fact, as it doubtless is, could he have insisted

Wampler *vs.* Wolfinger & Strite.

upon a different decree, if, instead of refusing, he had thought proper to defend the case? Clearly not. If he had defended and made claim for advances or improvements upon the land, and shown that such were actually made, he could not, according to established principles have been allowed for them. His fraudulent conduct would have effectually precluded him. The deed being fraudulent, is "to be considered void *ab initio*, and wholly wanting in legal fitness to stand as security for any advances whatsoever." It has been said that it would be inconsistent and absurd to recognise such a deed for any lawful purpose, and the court of Appeals, in *Strike vs. M'Donald*, 2 *H. & G.*, 261, have said, that such is the "sound practical rule for rejecting claims for improvements where the transaction is tainted with fraud." 4 *Johns*, 536, *Sands vs. Codwise*. But if the law were otherwise, no mere assertion of a claim for reimbursement here now could be regarded to affect the decree appealed from. This court is to form its opinion from what is made to appear in the record, and from that alone. It cannot assume, nor give the appellant the benefit of any presumption, that he has, or can show, any claim for advances or improvements. On the contrary, the rational and legal presumption is, that he has no such claim. By his conduct in not attempting to offer any defence, or make any claim at the proper time and place when he was required so to do, he precludes the idea, or even the possibility, that he could have any. He has admitted, in fact, that he had none, and a defendant, in his position, cannot be entitled to any strained presumptions in his favor, certainly none against his own admissions and contumacious conduct.

Nor can the appellant impeach that part of the decree, which requires him to account for rents and profits of the land while in his possession. In the case of *Strike vs. M'Donald*, just cited, it was said by the court, "It may be well received as a settled principle of equity, that whosoever comes into possession of an estate by fraud, must account for rents and profits when the fraudulent conveyance is vacated and set aside." See, also, 1 *Md. Rep.*, 470, *Waters vs. Dashiell*. The decree in this case does nothing more than was done in *Strike*

*vs. M'Donald,* and what was there sanctioned should be sanctioned here.

But it is said the averments of the bill are not sufficient to authorise the court to decree a sale of the lunatic's land. This is denied, but even if it were true, what right has this appellant, the fraudulent grantee in this deed, the party who has defrauded the lunatic of all his property, to become now the protector of the rights of the lunatic? What injury has been done the *appellant* by this alleged want of proper averments? How can *he* complain, or how has any injury been inflicted on *him* by this error, if it be one? It is submitted there is nothing of which the appellant can complain, to entitle him to a reversal of the decree.

ECCLESTON, J., delivered the opinion of this court.

The appellant insists, that the decree in this case is erroneous, and should be reversed, because it excludes him from any opportunity of being reimbursed for any purchase money paid by him. Such an opportunity he claims as his right, under the authority of *Long vs. Long,* 9 *Md. Rep.,* 348. But, in that case, it appears Ludwick Long, the party charged with committing the fraud, had executed nine promissory notes of $100 each, to Henry Long, who was said to be defrauded. The bill mentions these notes as having been given, and then states, that immediately afterwards they were taken from Henry by Ludwick, or his sons or agents; and were kept in his or their possession; that after Henry's death, Ludwick administered upon his estate, and if he had charged himself with these notes, in his account in the orphans court, it had been with the fraudulent intent of endeavoring to make good his title to the lands. The court below vacated the deeds as fraudulent. After hearing the argument upon the appeal, this court held, that the proof was fully sufficient to establish the alleged fraud, and to entitle the complainants to the relief sought by them. The cause, however, was remanded for further proceedings. This, we think, was done for the purpose of enabling Ludwick Long to be secured against the nine notes executed by him.

Wampler *vs* Wolfinger & Strite.

The present bill states, that the "consideration as set forth in the said deed, is in fact fraudulent, and merely pretended; and even if the said stated consideration was paid by the said Wampler to the said Wolfinger, it was wholly inadequate, and by fraudulent devices and contrivances of the said Wampler, it was extorted and taken from the said Wolfinger, and he was altogether deprived thereof." This being a decree *pro confesso*, without any answer or proof, there is nothing on which to base even a presumption that any thing was either paid or secured to be paid, as purchase money, by the appellant, but such a presumption is clearly negatived. He, therefore, has no right to insist upon having the cause remanded for the purpose of allowing him to be reimbursed on account of purchase money.

The case of *Strike vs M'Donald & Son, 2 Har. & Gill, pages* 194, 243, 244 and 261, is an authority sufficient to show that this decree is not subject to objection, because it charges the appellant with issues and profits of the land.

It has been said in argument, that the averments in the bill are not sufficient to authorize a sale of a lunatic's real estate; and such a sale having been directed by this decree, it is an error which should be corrected. But, even should it be conceded there is an error in this respect, the appellant is not injured thereby, and therefore, he cannot claim a reversal to correct the error. *Calwell vs. Boyer, 8 G. & J.,* 136. *Pratt, Adm'r of Kent, vs. Johnson, Adm'r of Johnson,* 6 *Md. Rep.,* 399.

This suit was instituted by the lunatic and his committee, for the purpose of relieving the property of the lunatic from a fraudulent transaction, charged upon the appellant; he, therefore, can have no just claim to be regarded as the protector of the rights and interests of the lunatic.

Another ground relied upon for a reversal is, that the appellant had no notice of the order for taking the bill *pro confesso*, previous to the passage of the final decree.

The act of 1799, ch. 79, section 2, is the law which is relied upon by the appellees' counsel as giving authority for the passage of this decree, without there being any necessity for

44    v. 13.

such previous notice to the defendants as has been insisted upon.

In the case of *Burch vs. Scott*, 1 *Bland's Ch. Rep.*, 112, the defendant having been summoned, and also attached, without appearing, Chancellor Johnson, on the 30th of March 1824, passed an order requiring him, either in person or by his solicitor, to put in a good and sufficient answer to each interrogatory in the bill, or a plea or demurrer to the same, on or before the 4th day of the July term, next ensuing, or otherwise the chancellor, upon application of the complainants, and at discretion, would either take the bill *pro confesso*, or direct a commission to issue for taking depositions, and would finally decree, as to him should seem meet and consistent with the established principles of equity, in the same manner as if the said defendant had appeared, and depositions had been taken in the usual way. "Provided a copy of this order be served on the said defendant, or left at his usual place of abode, before the 20th day of June next."

In a note on page 114, Chancellor Bland says: "The terms and form of this order were adjusted by Chancellor Hanson, according to the provisions of the act of 1799, ch. 79, sec. 2, in the case of *Walsh & others vs. Delassere & others*, 19th February 1800, and it has been followed ever since." Thus, it appears that, in a few months after the passage of the statute, it received a construction from an experienced chancellor, which has been acquiesced in by all his successors in office, including Chancellor Bland. We are also informed that the late able chancellor followed the example of his predecessors, until the Chancery court was abolished by our new Constitution. The early interpretation of the act has, therefore, been sanctioned by a uniform practice of more than fifty years. Under these circumstances we do not feel authorized to overrule it by an affirmance of the decree before us.

In *Fitzhugh and others, vs. McPherson*, 9 *G. & J.*, 61, it appears an order, *pro confesso*, had been passed, requiring notice of the same to be given before the 25th of February 1834, then ensuing. The third ground urged by the counsel

for the appellants for reversing the decree, was, because the order had not been served upon the defendants by the day named therein, or at any other time. The experienced counsel for the appellees did not pretend to deny the necessity for giving the notice, but insisted that the decree, *pro confesso*, having recited that the order had been served, it must be presumed to have been done. On page 71, the court say: "In the absence of all direct proof to the contrary, we regard the statement of the chancellor, in his order of the first of April 1834, 'that the above mentioned order had been duly served,' sufficient evidence of the truth thereof." Assigning this as a proper ground for refusing to sustain the defendants' third objection to the decree, affords a reasonable inference that the court considered notice of the order necessary. If they had thought otherwise, it is most probable they would have said so, instead of relying upon the statement of the chancellor in his order or decree, as furnishing sufficient evidence that proper notice had been given.

In *Porter, Exc'x of Harlougher, vs. Timanus, et al.*, 12 *Md. Rep.*, 283, the appellant objected to the correctness of a final order passed by the orphans court, revoking her letters, and appointing an administrator in her place. The order was said to be erroneous, because no notice had been given to her of a prior order passed on the subject. But, because the record showed that she was in court, represented by counsel, when the prior order was passed, this court considered that ample and complete notice was given. It was argued by the appellees' counsel, that no notice of such an order was required by the terms of the act of 1831, ch. 315, relating to the matters in controversy, and that none was necessary. The court, however, said: "We are of the opinion notice ought, in all cases, to be given to the party upon whom the order is designed to operate, and that he should be allowed his day in court to comply with its exigencies, or to show cause to the contrary, before the revocation of the letters."

No notice of the order *pro confesso*, having been given in the present case, the decree will be reversed; but, notwithstanding this reversal, nothing herein contained shall be held or

construed to affect, or in any way to impair, any right which any purchaser may have acquired to the property, or any part thereof, decreed to be sold in this case, under any sale which may have been made of such property under or by virtue of the said decree; but any such right shall be as good and valid as the same would have been in case the said decree had been in all things affirmed by this court, or as it would have been if the said decree had not been appealed from. The court below, however, will be fully authorized to pass all and every such order or decree in the premises as may be necessary to carry into effect the principles set forth in this opinion.

As authority for reserving and protecting the right of a purchaser under a decree, even where the decree may be reversed upon appeal, see the case of *Chase vs. M'Donald & Ridgely*, 7 *H. & J.*, 199. See, also, 6 *H. & J.*, 204; 11 *G. & J.*, 242; 12 *G. & J.*, 453; 1 *Gill*, 345, and 3 *Md. Rep.*, 471.

In the case before us the trustee reported a sale of the property, which was ratified and confirmed before this appeal was taken. The trustee is required to bring the proceeds of sale into the court below; and there they should be ultimately applied, according to the equitable rights which may be made to appear to the satisfaction of the court, upon the final hearing of the cause. It will therefore be remanded for further proceedings.

The costs are to await the final result.

*Reversed and cause remanded.*

